UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MILLER INVESTMENT TRUST, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 1:11-cv-12126-JLT |
| | * | |
| MORGAN STANLEY & CO. INC., | * | |
| and KPMG HONG KONG, | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM

July 24, 2012

TAURO, J.

I.      Introduction

        Plaintiff brings suit alleging that Defendants Morgan Stanley and KPMG Hong Kong sold

Plaintiff shares in a Chinese company, based on misrepresentations of material fact contained in

the offering documents.  After a Hearing held on May 17, 2012, Defendant Morgan Stanley's

Motion to Dismiss the Complaint [#12] is DENIED for the reasons set forth below.

II.     Background

        A.      Factual Background[1]

        This action stems from Plaintiff's purchase of $8 million worth of senior convertible notes

---

[1]In evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6), the
court must accept all well pled facts as true.  Accordingly, the facts of the case are laid out as they
are set forth in Plaintiff's Complaint. See Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc., 524
F.3d 315, 321 (1st Cir. 2008).  The court construes those facts in the light most favorable to
Plaintiff, see Pettengill v. Curtis, 584 F. Supp. 2d 348, 362 (D. Mass. 2008) (quoting
Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 96 (1st Cir. 2007)).

offered by ShengdaTech, a Nevada corporation with its principle place of business in China.[2]  It purported to manufacture nano-precipitated calcium carbonate, which is used as an additive in a number of products.[3]  ShengdaTech owns Faith Bloom Limited, a Singapore corporation, which in turn owns five companies incorporated under the laws of the People's Republic of China.[4] ShengdaTech derives all of its revenue from its Chinese subsidiaries.[5]

ShengdaTech became a U.S. publicly traded company through a reverse merger on March 31, 2006, and it filed a registration statement with the SEC on the same day.[6]  In response to ShengdaTech's registration statement, the SEC filed a letter indicating that the registration statement was so poorly prepared that it would not be reviewed by SEC staff.[7]  A new registration statement was filed on August 31, 2006 and, after a series of revisions with the SEC, the revised registration statement was declared effective on January 15, 2007.[8]

On May 14, 2008, ShengdaTech restated its annual report of fiscal year 2007.[9] Restatements are issued when the original report contained accounting errors.[10]  In June, 2008, "ShengdaTech issued $100 million of debt securities convertible into common stock at a fixed

---

[2]Compl. [#1] ¶¶ 2-6.

[3]Compl. [#1] ¶ 38.

[4]Compl. [#1] ¶ 39.

[5]Compl. [#1] ¶ 39.

[6]Compl. [#1] ¶¶ 46-47.

[7]Compl. [#1] ¶47.

[8]Compl. [#1] ¶ 47.

[9]Compl. [#1] ¶ 48.

[10]Compl. [#1] ¶ 48.

ratio (the '2008 Offering')."[11]  On April 1, 2009, ShengdaTech filed its annual report for the fiscal

year 2008, which contained financial statements for that fiscal year and an audit opinion by

Defendant KPMG.[12]  ShengdaTech filed its annual report for the fiscal year 2009 on March 15,

2010.  "The annual report contained financial statements" for fiscal year 2009 "and an audit

opinion by Defendant KPMG."[13]  On November 8, 2010, ShengdaTech filed its quarterly report,

which contained financial statements for the nine months ending September 31, 2010.[14]  This

information was included in the private placement memorandum that was provided to Plaintiff in

order to encourage investment in ShengdaTech.[15]  All of the financial statements in these reports

vastly overstated ShengdaTech's true financial performance.[16]

The financial statements are false because they reflect significantly higher revenue than

equivalent forms that ShengdaTech's wholly-owned subsidiaries filed with the Chinese

Administration of Industry and Commerce ("AIC").[17]  AIC filings must be signed by the legal

representative of the entity submitting them, and severe sanctions attach to filing fraudulent

documents.[18]  On revenue recognition there are no differences between U.S. GAAP and Chinese

GAAP, and so revenue figures on U.S. SEC filings and Chinese AIC filings should be

---

[11]Compl. [#1] ¶ 52.

[12]Compl. [#1] ¶ 53.

[13]Compl. [#1] ¶ 54.

[14]Compl. [#1] ¶ 55.

[15]Compl. [#1] ¶ 56.

[16]Compl. [#1] ¶¶ 53-56.

[17]Compl. [#1] ¶ 62.

[18]Compl. [#1] ¶¶ 58, 67.

substantially the same in regard to revenue recognition.[19]  Nonetheless, the financial statements that ShengdaTech's PRC companies filed with the AIC showed much less revenue than the financial statements presented to Plaintiff in the private placement memorandum soliciting the purchase of ShengdaTech's notes.[20]

Plaintiff alleges that, for a number of reasons, ShengdaTech's AIC filings, rather than its SEC filings, are correct.[21]  First, ShengdaTech's PRC subsidiaries are subject to serious penalties for violation of the AIC reporting requirement.  By contrast, as a company with its principal place of business in China, ShengdaTech has less to lose in the form of US sanctions.[22]  When independent professionals attempted to confirm the numbers cited in ShengdaTech's SEC filings, they discovered that ShengdaTech had invented customers, contracts, bank accounts, and U.S. certificates of deposit.[23]  Because the private placement memorandum provided to Plaintiff relied on the SEC filings and did not note the AIC filings, it vastly overstated ShengdaTech's revenue and net income.[24]

ShengdaTech's 2008 and 2009 SEC filings contained "clean" audit letters from KPMG attesting to the validity of ShengdaTech's filing.[25]  On September 15, 2010, ShengdaTech issued a restatement for its annual report for 2009 and its quarterly report for the period ending March 31,

---

[19]Compl. [#1] ¶¶ 59-60.

[20]Compl. [#1] ¶¶62-66.

[21]Compl. [#1] ¶ 67.

[22]Compl. [#1] ¶ 67.

[23]Compl. [#1] ¶ 67.

[24]Compl. [#1] ¶¶ 53-68.

[25]Compl. [#1] ¶ 69.

2010.[26]  These restatements led to the receipt of a letter from the SEC, and two weeks later ShengdaTech's CFO resigned. [27]

It is Plaintiff's contention that ShengdaTech's announcement that two of the prior three years' annual reports contained accounting errors should have alerted KPMG to the risk of errors in subsequent SEC filings.  KPMG should have exercised caution in editing ShengdaTech's future financial statements.[28]  These three errors also should have alerted Morgan Stanley to the risk of fraud.[29]

"On June 15, 2010, ShengdaTech filed a shelf registration statement on Form S-3" for the sale of "$100 million in equity securities with the proceeds going to ShengdaTech."[30]  On November 8, 2010, ShengdaTech amended its shelf registration statement so that it was on Form S-1, which allows for immediate sale of securities.[31]  KPMG gave ShengdaTech its consent to use the KPMG audit reports for fiscal years 2008 and 2009 in ShengdaTech's registration statement.[32]  Defendant Morgan Stanley was one of the underwriters for the offering.[33]

On December 9, 2010, ShengdaTech announced plans to offer $90 million of senior convertible notes due in 2015 in a private offering instead of going through with a previously

---

[26]Compl. [#1] ¶ 70.

[27]Compl. [#1] ¶¶ 70-71.

[28]Compl. [#1] ¶ 72.

[29]Compl. [#1] ¶ 73.

[30]Compl. [#1] ¶ 74.

[31]Compl. [#1] ¶ 75.

[32]Compl. [#1] ¶¶ 75-76.

[33]Compl. [#1] ¶ 77.

planned public offering.[34]  The company also announced that it intended to grant the initial note

purchasers an option to purchase an additional $30 million in those notes.[35]  The next day,

ShengdaTech announced that it had entered into a purchase agreement with Morgan Stanley and

that it would structure the offering as a convertible debt offering.[36]

In order to induce Plaintiff and other funds to purchase ShengdaTech's 2015 notes,

Defendant Morgan Stanley gave Plaintiff the Private Placement Memorandum (PPM), which was

drafted in part by Morgan Stanley and featured Morgan Stanley's name prominently on the

cover.[37]  "The Offering Documents included Defendant KPMG's audit report of ShengdaTech's

financial statements for [fiscal years] 2008 and 2009, and the unaudited financial statements for

the nine months ended September 30, 2010."[38]  The PPM invited recipients to examine

ShengdaTech's SEC filings.[39]  These filings contained overstatements of ShengdaTech's revenue

and net income that amounted to misstatements of material fact.[40] In contrast to ShengdaTech's

SEC filings, the AIC filings are not publicly available without prior authorization.[41]  Morgan

Stanley and KPMG, as ShengdaTech's agents, however, would have ready access to its AIC

---

[34]Compl. [#1] ¶ 78.

[35]Compl. [#1] ¶ 78.

[36]Compl. [#1] ¶ 79.

[37]Compl. [#1] ¶ 86.

[38]Compl. [#1] ¶ 86.

[39]Compl. [#1] ¶ 86.

[40]Compl. [#1] ¶ 87-88.

[41]Compl. [#1] ¶89.

6

filings.[42]  Neither Defendant obtained ShengdaTech's AIC filings.[43]

Relying on the Private Placement Memorandum and ShengdaTech's SEC filings, Plaintiff purchased $8 million of the 2015 notes directly from Morgan Stanley.  Plaintiff purchased the notes in five separate transactions, the first on December 10, 2010; the second on January 21, 2011; the third on February 4, 2011; the fourth on February 11, 2011; the fifth on February 16, 2011.[44]  As the underwriter and auditor for ShengdaTech in the offering, Defendants had "access to ShengdaTech's internal reports and other data on the company's finances, operations and sales at all relevant times, and should have conducted due diligence" on ShengdaTech's Chinese subsidiaries.[45]  Plaintiff asserts that even a basic investigation would have revealed that the SEC filings were false and misleading.[46]

Plaintiff goes on to allege that Defendants knew or should have known that ShengdaTech's operations and annual output were less than represented in the SEC filings.[47]  The PPM falsely reported that one of the NPCC facilities started production in late August 2009, "reached 90% capacity utilization at the end of 2009 and 100% capacity in January 2010."[48]  In fact, this facility was still under construction in 2009, and it did not start trial production until the

---

[42]Compl. [#1] ¶ 90.

[43]Compl. [#1] ¶ 90.

[44]Compl. [#1] ¶ 84.

[45]Compl. [#1] ¶ 85.

[46]Compl. [#1] ¶ 85.

[47]Compl. [#1] ¶ 92.

[48]Compl. [#1] ¶ 93.

end of that year.[49]  Defendants should have visited this facility as part of their due diligence, and a cursory investigation would have revealed the fraud.[50]

On March 2, 2011, in its audit of ShengdaTech's financial statements for the year 2010, Defendant KPMG reported discovering "potentially serious discrepancies and unexplained issues" relating to ShengdaTech's financial records.[51]  The issues included "the inability to confirm sales amounts, sales terms, and outstanding balances, as well as the discovery of undisclosed related party transactions with ShengdaTech's CEO."[52]  On March 4, 2010, ShengdaTech formed a special committee to oversee an internal investigation.[53]  The Special Committee retained a law firm, who in turn retained PricewaterhouseCooper, LLP to provide forensic accounting of the investigation.[54]  On March 14, 2011, trading in ShengdaTech's equity securities was suspended by NASDAQ.[55]  On March 15, 2011, ShengdaTech issued a press release stating that it had appointed a special committee "to investigate potentially serious discrepancies and unexplained issues relating to the company and its subsidiaries' financial records."[56]  That same day, NASDAQ indicated that it would not reinstate trading of ShengdaTech's securities until NASDAQ's request

---

[49]Compl. [#1] ¶ 94.

[50]Compl. [#1] ¶ 95.

[51]Compl. [#1] ¶ 97.

[52]Compl. [#1] ¶ 97.

[53]Compl. [#1] ¶ 98.

[54]Compl. [#1] ¶ 99.

[55]Compl. [#1] ¶ 100.

[56]Compl. [#1] ¶ 101.

for additional information had been satisfied.[57]

On June 9, 2011, ShengdaTech defaulted on the debt securities dated May 28, 2008.[58]  On August 19, 2011, ShengdaTech filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Nevada.[59]  Plaintiff's notes became immediately due and payable.[60]  "On August 24, 2011, ShengdaTech obtained a Temporary Restraining Order against its CEO."[61] ShengdaTech was later granted a preliminary injunction by the bankruptcy court.[62]  Plaintiff contends that Defendant KPMG was negligent in its failure to further investigate ShengdaTech's financials, and that KPMG's audit work was substandard.[63]

Plaintiff brings two counts in the Complaint: one against Morgan Stanley for violation of Mass. Gen. Laws c. 110A § 410; and a second against KPMG for negligent misrepresentation.[64]

B.     Procedural Background

On December 1, 2011, Plaintiff filed the Complaint against Defendants Morgan Stanley and KMPG Hong Kong.  On January 31, 2012, Defendant Morgan Stanley filed a Motion to Dismiss the Complaint [#12], which is currently at issue.  On February 14, 2012, Plaintiff filed a

---

[57]Compl. [#1] ¶ 102.

[58]Compl. [#1] ¶ 105.

[59]Compl. [#1] ¶ 106; Ex. 1 [#2] (Bankruptcy court findings of fact and conclusions of law).

[60]Compl. [#1] ¶ 106.

[61]Compl. [#1] ¶ 107.

[62]See Compl. [#1] ¶ 108.

[63]Compl. [#1] ¶¶ 109-142.

[64]Compl. [#1] ¶¶ 143-157.

Memorandum in Opposition, and on March 15, 2012, Defendant Morgan Stanley filed a Reply. On May 17, 2012, the court held a hearing on Defendant Morgan Stanley's Motion to Dismiss [#12], and took the matter under advisement.

III.   Discussion

Pursuant to Rule 8 of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[65]  When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6), "this court must accept all of Plaintiff's factual allegations as true, [but] bare assertions and conclusions of law are not entitled to similar weight."[66]  A complaint must state sufficient facts such that "the combined allegations, taken as true, must state a plausible, not merely conceivable, case for relief."[67]

This case is before the court under diversity jurisdiction, and is governed by Massachusetts securities law, which "imposes 'civil liability for sales [of securities] by means of fraud or misrepresentation.'"[68] This provision is "almost identical with § 12(2) of the Securities Act of 1933," and the Massachusetts law is designed to be interpreted in light of both state and federal precedent.[69]  To prevail on a claim under M.G.L. c. 110A §410(a)(2), a plaintiff must establish

---

[65]Fed. R. Civ. P. 8.

[66]Phillips v. City of Methuen, 818 F. Supp. 2d 325, 329 (D. Mass. 2011) (Tauro, J.).

[67]Raso v. RPM Restoration & Waterproofing LLC, No. 10-CV-10809-JLT, 2012 WL 1192772, at *1 (D. Mass. April 9, 2012) (Tauro, J.) (citing Sepulveda-Villarini v. Dep't of Educ. Of Puerto Rico, 628 F.3d 25, 29 (1st Cir. 2010)).

[68]Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 50 (2004) (quoting L. Loss, Commentary on the Uniform Securities Act, Draftsmen's commentary to § 410(a), at 147 (1976)); M.G.L. c. 110A §410(a)(2).

[69]Marram, 442 Mass. at 50-51.

that, "(1) the defendant 'offers or sells a security'; (2) in Massachusetts; (3) by making 'any untrue statement of material fact' or by omitting to state a material fact; (4) the plaintiff did not know of the untruth or omission; and (5) the defendant knew, or 'in the exercise of reasonable care [would] have known,' of the untruth or omission."[70]   The plaintiff in a claim under this provision does not need to prove scienter, negligence, or reliance because the law is designed to hold the seller "liable for inaccurate disclosure or nondisclosure of material information."[71]   The question before the court, therefore, is whether Plaintiff has sufficiently alleged the five elements required to state a claim against Defendant Morgan Stanley under M.G.L. c. 110A § 310(a)(2).

A.    Disparity in Chinese and American Financial Reports

Defendant does not dispute that it sold Plaintiff the relevant shares of ShengdaTech in Massachusetts.  Instead, it is Defendant's position that Plaintiff has not established the existence of an untrue statement of material fact, or that Defendant knew or should have known of the existence of such an untrue statement.

The heart of Plaintiff's claim is the differences between ShengdaTech's SEC filings and the AIC filings of its Chinese subsidiaries.  In the Complaint, Plaintiff alleges that ShengdaTech's financial statements for the fiscal years 2008 and 2009, and the first three quarters of 2010 reflect substantially higher revenue than the financial statements filed by ShengdaTech's subsidiaries with the AIC.  Plaintiff goes on to allege that these subsidiaries are the sole source of ShengdaTech's income.[72]  Crucially, Plaintiff also alleges that there are no significant differences between United

---

[70]Id. at 51 (quoting M.G.L. c. 110A § 410(a)(2)).

[71]Marram, 442 Mass. at 53.

[72]Compl. [#1] at ¶ 39.

States and Chinese accounting principles on revenue recognition.[73]

In light of the similarity between US and Chinese accounting principles on revenue recognition, and given the fact that ShengdaTech's PRC subsidiaries are its sole source of revenue, Plaintiff alleges that the AIC and SEC filings should be similar.  In fact, however, ShengdaTech's SEC filings reflected substantially higher revenue than the AIC filings of ShengdaTech's subsidiaries.[74]  The AIC filings are more likely to be accurate than the SEC filings because, while ShengdaTech's PRC subsidiaries are subject to stiff penalties for filing false statements with the AIC, Chinese extradition policies make it difficult to hold Chinese officers and directors of American corporations liable for violations of the SEC's filing requirements.[75]  Furthermore, the Complaint goes on to allege that when "independent professionals finally attempted to confirm the numbers cited in ShengdaTech's SEC filings, they found that ShengdaTech had invented customers, contracts, bank accounts, and U.S. certificates of deposit."[76]

ShengdaTech's SEC filings were provided to Plaintiff by Morgan Stanley as part of the private placement memorandum for the purchase of the 2015 ShengdaTech notes.[77]  Because of the incorporation of the SEC filings, ShengdaTech's revenue was largely overstated in that

---

[73]Compl. [#1] at ¶ 60.

[74]See Compl. [#1] ¶¶ 65-66.

[75]Compl. [#1] at ¶67.

[76]Compl. [#1] at 67.

[77]Compl. [#1] at 68.

document.[78]  Plaintiff goes on to allege that Defendant Morgan Stanley either knew or should

have known of the untruth of the omission:

> As the underwriter and auditor, respectively, Morgan Stanley and
> KPMG had access to ShengdaTech's internal reports and other data
> and information about those companies' finances, operations and sales
> at all relevant times and should have conducted due diligence on
> ShengdaTech's PRC Companies.  Had defendants conducted the most
> basic investigation, they would have discovered that ShengdaTech's
> financial statements were false and misleading.[79]

In light of these allegations, it is clear that Plaintiff has provided sufficient facts, taken as true, to

state a plausible claim for relief.

Whether the differences between AIC and SEC filings can form the basis of a claim under

United States securities laws is a relatively new issue for the federal courts.  Most litigation on

this issue has taken place in district courts in California, and both parties have filed a number of

unpublished cases that treat this issue in depth.  In Stranger v. China Electric Motor, Inc., the

U.S. District Court for the Western District of California found that:

> In the context of businesses operating both in the United States and
> China, a plaintiff may properly allege falsity by pointing to
> inconsistencies between SEC and SAIC filings. [] If a party is pleading
> falsity through such inconsistency, they must allege that Chinese and
> U.S. accounting standards are similar to the underlying data of both
> financial statements and that [they] came from the same source.[80]

In Brown v. China Integrated Energy, Inc., the court found that Rule 8's requirements were met

---

[78]Compl. [#1] at 68.

[79]Compl. [#1] at ¶ 85.

[80]Stranger v. China Elec. Motor, Inc., No. 11-CV-2794 R, March 26, 2012 Motion
Hearing at *5 (citing In re China Educ. Alliance, Inc., Sec. Litig., No. 10-CV-9239-CAS, 2011
WL 4978483 (C.D. Cal. October 11, 2011); Katz v. China Century Dragon Media, 11-CV-
02769-JAK, 2011 WL 6047093 (C.D. Cal. Nov. 30, 2011)).

where the plaintiff pled that the U.S. and Chinese financial reporting figures were inconsistent, and that the Chinese figures were more likely accurate because American regulators have little ability to punish corporations with their principle place of business in China.[81]

It is also important to note that the Massachusetts securities law does not contain a scienter requirement.  Rather, it conditions liability on the existence of a misstatement of material facts that Defendants either knew, or in the exercise of due diligence should have known.[82]  Here, Plaintiff's complaint does not sound in fraud, but alleges that if Defendant Morgan Stanley had exercised due diligence in preparing the private placement memorandum, it would have uncovered the discrepancies in ShengdaTech's Chinese and American financial reporting.[83]  Crucially, Plaintiff pleads that the Chinese and American accounting standards are substantially similar on the issue of revenue recognition, that Chinese penalties for failure to file accurate reports are more likely to affect Chinese companies incorporated in the United States than SEC penalties, and that ShengdaTech's Chinese subsidiaries were the sole source of its revenue.  It is clear, therefore, that Plaintiff has met Rule 8 's requirement to make a "short and plain statement of the claim showing that the pleader is entitled to relief."[84]

Most courts that have considered whether differences in SEC and AIC filings are sufficient to state a claim have addressed it in the context of the heightened pleading requirement of Rule

---

[81]Brown v. China Integrated Energy, Inc., 11-CV-02559-MMM, 2012 WL 129909 at *8-9 (C.D. Cal. Apr. 2, 2012).

[82]See Marram at 53; see also M.G.L. c. 110A § 410(a)(2).

[83]See, e.g., Compl. [#1] ¶¶ 85, 92-93, 109-142.

[84]Fed. R. Civ. P. 8(a)(2).

14

9(b).[85]   In In re China Intelligent Lighting and Electronics, the court found that Plaintiffs did not

meet Rule 9(b)'s more rigorous pleading standards, but could have done so by alleging, "that the

SEC and SAIC numbers are based on the same underlying financial data or that the accounting

standards used for both the SEC and SAIC are substantially the same."[86]   In this case, as set forth

above, Plaintiff has done just that.[87]   Because Plaintiff's claims, as set forth in the Complaint

would be sufficient to satisfy Rule 9(b), it is clear that they state a plausible claim for relief under

the applicable and more lenient pleading standard set forth in Rule 8.

       **B.**    **Aftermarket Purchases**

       Defendant Morgan Stanley next contends that Plaintiff has failed to state a claim under

Massachusetts securities law because some of the ShengdaTech notes at issue were purchased by

Plaintiff after the close of the initial offering.[88]   The facts of the Complaint reflect that "[Plaintiff]

---

[85]See, e.g., Redwen v. Sino Clean Energy, Inc., 11-CV-03936 PA, 2012 WL 1991762 at *4-5 (C.D. Cal. Jun. 4, 2012); In re China Intelligent Lighting and Electronics, Inc. Sec. Litig., 11-CV-2768 PSG (C.D. Cal. Feb. 14, 2012) (requiring Plaintiffs to "explain why the discrepancy between the financial statements submitted to the SEC and the financial statements submitted to the SAIC necessarily means fraud has been committed."); see also Scott v. ZST Digital Networks, Inc., CV 11-03531 GAF, 2012 WL 538279 at *9 (C.D. Cal. Feb. 14, 2012) (finding that Plaintiff has stated a claim where he "has alleged both that Defendants filed disparate revenue figures in China and the United States, and that the Company subsequently made further misstatements in seeking to explain these differences," and that Plaintiff had alleged that the differences in accounting practices were insufficient to explain the difference in reported financials.).

[86]In Re China Intelligent Lighting, CV 11-2768 at *6; See also Brown v. China Integrated Energy, Inc., ___ F. Supp. 2d ___, 2012 WL 2866462 at *12 (C.D. Cal. July 12, 2012) (finding that Plaintiff had met Rule 9(b)'s heightened pleading standard where he asserted both a difference in SEC and SAIC filings, and also provided facts supporting the position that the SEC filings were inaccurate).

[87]See Supra at II. Background.  See also Compl. [#1] ¶¶ 53-68.

[88]Def.'s Mem. in Supp. [#13] at 17-18.

purchased $8,000,000 of notes, all from Morgan Stanley [. . . ]"[89]

In <u>Marram v. Kobrick Offshore Fund, Ltd.</u>, the Supreme Judicial Court declined to dismiss the Plaintiff's claim under Massachusetts securities law where the plaintiff made a number of stock purchases from the defendant at different times based on the same private offering memorandum and subscription agreement.[90]  The facts of this case are analogous to those presented in <u>Marram</u> because Plaintiff, although it made multiple stock purchases, completed them all in reliance on the same private offering memorandum, which is alleged to have contained material misrepresentations.  In light of the similarities between this case and the <u>Marram</u> case, this court does not reach the broader issue of whether the Massachusetts Blue Sky law applies to aftermarket transactions more generally.  Plaintiff may, therefore, proceed on its claims related to securities purchased outside of the initial offering.  Which, if any, sales of securities resulted from the alleged misstatement contained in the private placement memorandum is a question of fact more appropriately determined at trial.[91]

IV.   <u>Order</u>

For the foregoing reasons, this court hereby orders that Defendant's <u>Motion to Dismiss</u> is DENIED.

IT IS SO ORDERED.

---

[89]Compl. [#1] at ¶ 31.

[90]<u>Marram</u>, 442 Mass. at 46.

[91]<u>See</u> <u>In re Access Cardiosystems, Inc.</u>, 460 B.R. 67, 77-78 (D. Mass. 2011) (discussing the "in connection with" requirement of the Massachusetts Blue Sky Law).

    /s/ Joseph L. Tauro
United States District Judge