UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MILLER INVESTMENT TRUST,<br><br>　　Plaintiff,<br><br>v.<br><br>MORGAN STANLEY & CO. INCORPORATED and KPMG HONG KONG,<br><br>　　Defendants. | Civil Action No.11-CV-12126-JLT |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT**
**KPMG HONG KONG'S MOTION TO STRIKE**

Thomas G. Shapiro (BBO # 454680)
Adam M. Stewart (BBO # 661090)
SHAPIRO HABER & URMY LLP
53 State Street, 13th Floor
Boston, MA 02109
Telephone:  (617) 439-3939
tshapiro@shulaw.com
astewart@shulaw.com


Laurence M. Rosen (pro hac vice)
THE ROSEN LAW FIRM, P.A.
275 Madison Avenue, 34th Floor
New York, NY, 10016
Telephone: (212) 686-1060
lrosen@rosenlegal.com
*Counsel for Plaintiff Miller Investment Trust*

**I. ARGUMENT**

Plaintiff Miller Investment Trust ("Miller") filed this action to recover the $8 million it lost when, three months after it bought ShengdaTech, Inc. bonds, it was revealed that ShengdaTech had never been more than an elaborate Potemkin Village. ShengdaTech had claimed $250 million in assets and $100 million in revenue; its revenues were less than $10 million, and its assets nearly entirely imaginary. The bonds are virtually worthless now, as they have been since the revelation that ShengdaTech was a Potemkin village.

Defendant KPMG, a Hong Kong Partnership ("KPMG") audited ShengdaTech's financial statements, pronounced them accurate, and so allowed ShengdaTech to perpetrate its fraud. Plaintiff sues KPMG, and KPMG has filed a pre-discovery motion to dismiss, in which it argues that its audit reports on ShengdaTech (for which ShengdaTech paid over a million dollars) were only KPMG's opinion on (or thoughts about, or constructive criticism of) ShengdaTech's financial statements. Thus, KPMG adds, because it actually believed that ShengdaTech's financial statements were accurately stated even though they clearly were not, KPMG cannot be liable.

Plaintiff's position is that at least in the First Circuit, KPMG's liability for making a false statement in its audit report does not turn on something as ephemeral as KPMG's subjective belief. Rather, an auditor's report on financial statements is a statement of fact about those financial statements, and if the financial statements contain false statements, then so does the audit report.

But buttressed by a rule which prohibit plaintiffs from obtaining discovery against it before surviving a motion to dismiss, KPMG argued that to survive such a motion to dismiss, those plaintiffs must plead with specificity what, specifically, KPMG discovered in its audit -- and the specific actions KPMG undertook to discover it -- that allowed KPMG to certify this

1

massive fraud's financial statements for two years. Thus, according to KPMG, plaintiffs must allege "how KPMG [] performed its audit or what it should have done differently." KPMG Reply, Dkt. # 94, at 8 (internal quotation omitted).

KPMG is wrong about the law, but even if it were right, new facts have arisen that shows exactly what KPMG did to miss this enormous Potemkin village. Plaintiff obtained these facts through a case-initiating complaint (the "Liquidator's Complaint", placed on this Court's docket at # 97-1) which had been filed by ShengdaTech's Liquidating Trustee against KPMG a day before Plaintiff was set to file its sur-reply in opposition to KPMG's motion to dismiss. Plaintiff conveyed these new facts by attaching to a declaration the Liquidator's Complaint. The new facts include:

- That certain forged Certificate of Deposit, which were discovered to be fraudulent merely by calling the purported issuing bank, amounted to $65 million, making KPMG's failure even to call the issuing bank negligent or reckless. (Liquidator's Complaint, ¶50);

- Though customer confirmations must be conducted in an audit, when KPMG finally performed customer confirmations to the purported customers themselves rather than addresses provided by ShengdaTech's management, KPMG found that many customers either did not buy from ShengdaTech or ShengdaTech vastly overstated sales to these customers, as shown in this chart appearing in the Liquidating Trustee's complaint (Liquidator's Complaint, ¶43):

|  | 2010 Sales Recorded in ShengdaTech's Books (RMB) | 2010 Sales Confirmed Via Inquiry Sent to Address Provided by ShengdaTech Management (RMB) | 2010 Sales Confirmed Via Direct Customer Contact (RMB) |
|---|---|---|---|
| Xika (China) | 7,667,094 | 7,667,094 | 0 |
| Zhengzhou Minghua | 7,621,367 | 7,621,367 | 114,000 |
| Zhengzhou Zhongyuan | 9,525,897 | 9,525,897 | 662,000 |

And no great diligence was required to determine that ShengdaTech had been engaged in massive fraud, as the investigators established ShengdaTech's fraud through an elementary investigation:

- The investigation found that three documents purporting to be from the same bank bore different "chops" -- a sign that some had been forged. When KPMG contacted the bank to determine whether ShengdaTech had an **RMB 553,062,048.83** balance with that bank -- ***almost $75 million*** -- the bank told KPMG that the number could not possibly be accurate, because the branch only had RMB 200 million deposited in all the business accounts customers had with it. (Liquidator's Complaint, ¶48).

- ShengdaTech had reported buying over $30 million in coal over 3 years from a company named Xianyang Chuangfa. The investigation called Xianyang Chuangfa to verify these amounts in 2011, and Xianyang Chuangfa told the investigation it had not done business with ShengdaTech for years. (Liquidator's Complaint, ¶76). The investigation also sought to confirm purchases amounting to about $5 million from an entity called Xingtai Guanfa, but could not find evidence that Xingtai Guanfa even existed. (Liquidator's Complaint, ¶77).

Thus, though Plaintiff's complaint sufficiently alleges KPMG's liability, even if the Court agreed with KPMG's argument, it should not dismiss Plaintiff's complaint with prejudice. The

new facts, which Plaintiff would allege after conducting an investigation that provided sufficient grounds to allege them in a complaint, would meet even the onerous standard KPMG claims plaintiffs must meet before they can be allowed to pursue claims against it: the allegations show "how KPMG [] performed its audit" (for example, it failed to check the chops on ShengdaTech's bank letters concerning an account that held more than half its cash, never called that bank, never performed customer or supplier checks with the actual customers) and "what it should have done differently." KPMG Reply, Dkt. # 94, at 8. Thus, citing these new facts, Plaintiff requested that the Court dismiss the complaint without prejudice if it were inclined to dismiss it at all.

KPMG has moved to strike the new facts. KPMG argues that the Court should not rely on the facts in evaluating Plaintiff's complaint, and, in turn, in evaluating KPMG's motion. But KPMG equivocates: the cases KPMG cites show that it is true that such facts cannot be considered in determining whether to grant a motion to dismiss (although they do rebut KPMG's glib commentary that the fact Plaintiff pleads -- that ShengdaTech was a Potemkin village -- is implausible).[1] *Gibbs v. SLM Corp.*, 336 F. Supp. 2d 1, 14 n.5 (D. Mass. 2004) (new facts would not be contend in determining whether to grant or deny motion to dismiss) (*citing Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (similar, and affirming judgment because plaintiff failed to seek leave to amend). So KPMG cites these cases, and says they hold that new facts cannot be considered in connection with a motion to dismiss.

But new facts *can* be considered in connection with a motion to dismiss -- they can considered to determine whether to grant the motion *without prejudice*. *Silverstrand Investments v. AMAG Pharmaceuticals, Inc.*, 707 F.3d 95, 107 (1st Cir. 2013) (plaintiff should "set forth the factual and legal predicate" for their request that leave to amend be granted, for example by

---

[1] (Reply, Dkt. # 94, at n. 11).

stating in a brief "what sort of new facts [it] may allege now to cure the deficiencies in [its] amended complaint.") Here, Plaintiff offered these facts to show that "**If the Court is inclined to grant KPMG's motion to dismiss, leave to amend should be granted.**" (Sur-Reply, Dkt. # 96, at 9 (header)) (emphasis in original).

Nor is there any merit to KPMG's contention that the Court must, before granting leave to amend, wait for Plaintiff to file a motion for leave to amend (rather than to make an adequate request in a brief). KPMG cites no authority, and its contention is rebutted by *Silverstrand* ("Not much is needed to satisfy this rule [...] Litigants simply have to set forth the factual and legal predicate for the remedy sought"). Plaintiff met *Silverstrand* when it filed its Sur-Reply, and it meets *Silverstrand* again when it files this brief.

## II.  CONCLUSION

For the foregoing reasons, the Court should deny KPMG's motion to strike.

Dated: September 5, 2013

Respectfully submitted,
Miller Investment Trust
By its attorneys,

/s/ Laurence M. Rosen
Laurence M. Rosen (pro hac vice)
THE ROSEN LAW FIRM, P.A.
275 Madison Avenue, 34th Floor
New York, NY, 10016
Telephone: (212) 686-1060
lrosen@rosenlegal.com

Thomas G. Shapiro (BBO # 454680)
Adam M. Stewart (BBO # 661090)
SHAPIRO HABER & URMY LLP
53 State Street, 13th Floor
Boston, MA 02109
Telephone:  (617) 439-3939
tshapiro@shulaw.com
astewart@shulaw.com

*Counsel for Plaintiff Miller Investment Trust*

**Certificate of Service**

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on September 5, 2013.

      **/s/ Laurence M. Rosen**