UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MILLER INVESTMENT TRUST and JURA LIMITED, <br><br>　　　　　　　　　　　　Plaintiffs, <br><br>　　　　v. <br><br>MORGAN STANLEY & CO. LLC and KPMG, a Hong Kong Partnership, <br><br>　　　　　　　　　　　　Defendants. | CIVIL ACTION <br> NO. 1:11-cv-12126 |

**KPMG-HK's MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' MOTION FOR LEAVE TO FILE ADDITIONAL ALLEGATIONS**

Plaintiff Miller Investment Trust ("Miller") first brought suit against Defendant KPMG, a Hong Kong Partnership ("KPMG-HK") in 2011. Miller has since filed two amended complaints (dkt. nos. 56, 126). KPMG has filed, and briefed, four motions to dismiss (dkt. nos. 36, 58, 83, 129). Meanwhile, Plaintiffs have also sued KPMG-HK in United States District Court in Nevada, raising the exact same allegations put forward here. No. 3:14-cv-00133-LRH-VPC (D. Nev. filed Mar. 13, 2014). All the while, Miller has refused, despite repeated overtures, to discuss settling its claims. Plaintiffs now propose to file a fourth version of their complaint, based on information that they had almost a year ago—*before* the Court allowed their third complaint to be filed. Because it is futile, untimely, and unfairly prejudicial, KPMG-HK respectfully urges the Court to reject Plaintiffs' motion.[1]

---

[1] While the motion is titled "Motion for Leave to File Additional Allegations," rather than "Motion for Leave to Amend," Plaintiffs assert that Rule 15(a), covering amendments of complaints, applies. *See* Motion at 4. Since there is no provision in the Rules allowing a party "to file additional allegations" other than by amending a complaint, KPMG agrees that the motion should be treated as a motion to amend and responds accordingly. *See also* n.5 *infra*.

### A. The Motion Should Be Rejected Because It Is Futile.

A motion to amend is futile, and should not be granted, when the proposed amended complaint would fail to withstand a motion to dismiss. *See Hatch v. Dep't for Children, Youth & Their Families,* 274 F.3d 12, 19 (1st Cir. 2001); *see also Maldonado v. Dominguez,* 137 F.3d 1, 11 (1st Cir. 1998) (amendment futile in securities fraud case where proposed complaint would have remained insufficient under Rule 9(b)). These principles apply here.

The claims against KPMG-HK are for allegedly false audit opinions regarding ShengdaTech's FY 2008 and FY 2009 financial statements. An audit opinion, like any other opinion, is false only if it is does not accurately state the speaker's beliefs.[2] Most charitably construed in Plaintiffs' favor, the SAC attempts to allege that KPMG-HK *must* have *knowingly* conducted a deficient audit, which, in Plaintiffs' view, would render the audit opinions false. As shown in KPMG-HK's pending motion to dismiss (dkt no. 132 and dkt. no. 142), the SAC does not contain well-pleaded facts sufficient to state a claim that KPMG-HK's audit opinions were false. More specifically, the SAC fails to plead that KPMG-HK did not honestly believe that its audits were conducted in accordance with Generally-Accepted Auditing Standards ("GAAS").

In attempting to plead that KPMG-HK made a false statement, Plaintiffs have focused on the relationship between ShengdaTech and SSCM during 2007. As discussed in the SAC and KPMG-HK's pending motion to dismiss, ShengdaTech's 2007 financial statements incorrectly stated that SSCM was no longer a related party of ShengdaTech. During its audit of the FY 2008

---

[2] Every court of appeals to have considered the question except for *Dist. Council of Laborers v. Omnicare, Inc.*, 719 F.3d 498, 505 (6th Cir. 2013) has determined that for an opinion to be actionable under the federal securities laws, a plaintiff is required to allege and prove subjective falsity. *See*, *e.g.*, *Fait v. Regions Financial Corp.*, 655 F.3d 105 (2d Cir. 2011); *Rubke v. Capital Bancorp Ltd.*, 551 F.3d 1156 (9th Cir. 2009); *In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357 (3d Cir. 1993). The Supreme Court has heard argument in *Omnicare*, which arose under Section 11 of the Securities Act of 1933.

financial statements, KPMG-HK determined that SSCM had remained a related party in 2007. References to 2007 contained in the 2008 financial statements were adjusted accordingly. *See* SAC ¶¶ 76-77, 161-171.

SSCM's status in 2007 is a sideshow. KPMG-HK did not audit the 2007 financial statements. And the 2008 financial statements accurately identified SSCM as having been a related party in 2007. *See* Appendix to KPMG-HK Motion to Dismiss, dkt. no. 133-12. Moreover, Plaintiffs knew SSCM was a related party when they purchased their investments in ShengdaTech. *See* SAC ¶¶ 89, 91, 92, 185; *see also* dkt. no. 14-1 at 81 (offering memorandum for notes purchased by Plaintiffs). Plaintiffs do not allege that they relied on any misstatement about SSCM's related party status.

Instead, what Plaintiffs apparently seek to argue, in reference to SSCM, is that KPMG-HK knowingly did not comply with GAAS. The SAC asserts that in determining that SSCM was still a related party in 2007, KPMG-HK also determined that ShengdaTech management had misrepresented SSCM's status to the predecessor auditor. SAC ¶ 218(a). From this allegation, the SAC further supposes that GAAS required KPMG-HK to take audit steps that it did not take.

As demonstrated in KPMG-HK's motion to dismiss briefing, these allegations fall well short. Far from pleading that KPMG-HK knowingly failed to comply with GAAS, the SAC does not even contain a single factual allegation—regarding SSCM or anything else—of a step GAAS required, but KPMG-HK did not take.

The newly-proposed allegations do not change this failing. Indeed, the proposed allegations add very little to the preexisting SAC. They are about the exact same misrepresentation by ShengdaTech management regarding SSCM already asserted in the SAC. The only additional detail is that Plaintiffs now identify the email where management made its

3

representation to Hansen Barnett, the predecessor auditor, and the email showing that the representation to Hansen Barnett was identified by KPMG-HK.

The proposed new allegations go on to posit a variety of legal conclusions about things KPMG-HK purportedly was required to do after finding the email in question. These proposed allegations, like their counterparts in the SAC, are all precatory. They are not linked either to GAAS or to any alleged misstatement by KPMG-HK. *See also* n.3 *infra*.

Additionally, Plaintiffs propose to add the conclusory allegation that after finding the email, "KPMG never evaluated whether it could continue to rely on ShengdaTech management's representation [about SSCM]." Proposed Allegations ¶ 18. It is only this final, conclusory allegation (¶ 18) that is even arguably responsive to KPMG-HK's argument that "the SAC fails to allege facts showing that KPMG-HK did not act in accordance with GAAS with respect to potential related party transactions." Dkt. no. 132 at 19; *see also* dkt. no. 142 at 6-8. For two reasons, the new allegations are legally insufficient to show falsity.

First, paragraph 18 of the proposed additional allegations is not a "factual allegation[]" as is required under Rule 9(b). *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 193 (1st Cir. 1999); *See* dkt. no. 132 at 7-8. Rather, Plaintiffs' assertion that KPMG-HK "never evaluated whether it could continue to rely of ShengdaTech management's representation" is simply Plaintiffs' supposition.

Second, Plaintiffs' unsupported assertion that "KPMG never evaluated whether it could continue to rely of ShengdaTech management's representation" is actually contradicted by the genuine "factual allegations" in the SAC. The SAC *shows* that KPMG-HK *did* "evaluate[] whether it could continue to rely on ShengdaTech management's representation" about SSCM after February 5, 2009. Some of the steps taken by KPMG-HK at the relevant time are set forth

4

in the sealed version of the SAC and discussed in the motion to dismiss briefing. *See* SAC ¶¶ 168, 174, 175, 181, 182; *see also* dkt. no. 132 at 19; dkt. no. 142 at 8.[3] These specific allegations, already in the SAC, trump Plaintiffs' new, unsupported supposition. *See Animal Hosp. of Nashua, Inc. v. Antech Diagnostics*, No. 11-CV-448-SM, 2012 WL 1801742, at *4 (D.N.H. May 17, 2012) (dismissing complaint where "the general allegation . . . is directly contradicted by specific factual allegations in the complaint") (*citing Carrol v. Xerox Corp.,* 294 F.3d 231, 243 (1st Cir. 2002)).

In short, the proposed new allegations do not overcome the showing made by KPMG-HK in its reply brief in support of the motion to dismiss: Plaintiffs "cannot point to a requirement in GAAS to take any step that KPMG-HK did not take." Dkt. no. 142 at 8. Accordingly, the proposed amendment is futile and the Motion should be denied. *See Maldonado*, 137 F.3d at 11.

### B. The Motion Should Also Be Rejected Because It is Untimely and Unfairly Prejudicial.

#### 1. Plaintiffs Have Not Shown A "Valid Reason" For Their Delay

"Where . . . considerable time has elapsed between the filing of the complaint and the motion to amend, the *movant* has the burden of showing some 'valid reason for his neglect and delay.'" *Grant v. News Grp. Boston, Inc.*, 55 F.3d 1, 6 (1st Cir. 1995) (emphasis in original) (quoting, *inter alia*, *Stepanischen v. Merchants Despatch Transp. Corp.,* 722 F.2d 922, 933 (1st Cir. 1983)). In assessing the movant's explanation, the court may deny leave to amend for any "adequate reason" including but not limited to "*undue* delay" *Id.* at 5 (emphasis added). *See also In re Lombardo*, 755 F.3d 1, 3 (1st Cir. 2014) ("[U]ndue delay in moving to amend, even

---

[3] These specific allegations also contradict Plaintiffs' unsupported assertion that KPMG-HK did not appropriately follow up with ShengdaTech's audit committee about the alleged "lie." Proposed Additional Allegations ¶ 16. In any event, there is no allegation that KPMG-HK's communications with the audit committee, or purported lack thereof, gave rise to any misstatement actionable under Section 18 or Massachusetts common law.

5

standing alone, may be [] adequate reason" to deny a motion to amend.)  Leave to amend need not be given after a delay caused by "absence of due diligence on the movant's part." *Palmer v. Champion Mort.*, 465 F.3d 24, 30 (1st Cir. 2006).  Indeed, "[i]n assessing whether delay is undue, a court will take account of what the movant knew *or should have known* and what he did or *should have done*." *In re Lombardo*, 755 F.3d at 3-4 (internal quotation marks omitted and emphasis added).

Here, the relevant time line is clear.  Plaintiffs received the documents that they propose to add to the complaint on February 18, 2014.  Motion at 6.  Plaintiffs filed their Second Amended Complaint on March 10, 2014 (20 days *after* Plaintiffs received the documents referred to in the proposed amendment).  Dkt. no. 126.  On March 13, 2014, Plaintiffs filed virtually the same complaint in Nevada.  According to Plaintiffs, they "discovered the evidence supporting the Additional Allegations" in a deposition on March 28, 2014.  Motion at 6.  KPMG-HK timely filed its motion to dismiss on April 9, 2014 (6 weeks *after* Plaintiffs received the documents).  Dkt. no. 129.  Plaintiffs *used* the documents in a deposition on July 25, 2014.  Motion at 6.  They proposed amending their complaint to add the documents, in a telephone call with undersigned counsel, only on September 4, 2014.  *See* Goldman Decl. ¶ 3.  And Plaintiffs did not file the current Motion until January 15, 2015, 11 months after they received the documents.  Dkt. no. 155.

Plaintiffs claim that, "until late December 2014" they "believed they would receive more . . . evidence against KPMG."  This does not justify sitting on the documents they now propose to add, which were in Plaintiffs' possession on February 18, 2014.

Plaintiffs apparently did not actually review the documents until sometime after February 2014.  But this is no justification for their delay, either.  The documents giving rise to the motion

6

were emails, written in English, through a KPMG email address with which Plaintiffs were already familiar. *See* SAC ¶ 175 (containing KPMG email address). Plaintiffs could have simply searched for "*@kpmg*" and located the few documents that might have been relevant to their pending suit against KMPG, including the documents they now propose to add to their complaint. Moreover, the emails were with a specific KPMG-HK employee identified by name and title in the SAC. *See* SAC at 24 n.8. The name is unusual and easily searched-for. Not only were Plaintiffs familiar with the employee and her role in the audit, they were seeking to depose her in connection with their S.D.N.Y. suit against ShengdaTech's independent directors. Dkt. no 80 at 1 in No. 12-CV-4997-LGS (S.D.N.Y. Apr. 17, 2014). KPMG-HK should not be asked to foot the bill for Plaintiffs' failure timely to conduct simple searches of documents in their possession.

Plaintiffs should have felt some urgency, too, because they knew that KPMG-HK would not consent to further delays or amendments. Shortly after filing a motion for leave to amend their complaint for a second time, in February 2014, Plaintiffs contacted KPMG-HK. Plaintiffs stated that they had received documents through discovery in their S.D.N.Y. lawsuit and inquired whether KPMG-HK would allow them additional time to review the documents before amending their complaint again. KPMG-HK declined to give that consent, noting that it had already consented to two amended complaints and did not think that further delays or further amendments were appropriate. *See* Goldman Decl. ¶ 2. Nonetheless, Plaintiffs did not act promptly to identify the documents giving rise to this motion. Nor did Plaintiffs ask the Court to allow them additional time to review documents before filing their amended complaint.

If more were needed to demonstrate "undue" delay by Plaintiffs, it is found in their concession that they "discovered the evidence supporting the Additional Allegations," at least in

7

part, by March 2014, *before* KPMG filed its motion to dismiss. If the new "evidence" was important enough to warrant a new complaint, Plaintiffs should have acted promptly. Instead, they sat on their hands for nine more months.

The First Circuit has upheld many denials of motions to amend in analogous circumstances. Just this past October, the First Circuit held that "the plaintiffs failed to act with sufficient speed in seeking to [amend]" when they could not explain their failure to identify an additional party from documents that were available, even if not reviewed, long prior to the proposed amendment. *See Perez v. Hosp. Damas, Inc.*, 769 F.3d 800, 804 (1st Cir. 2014). In affirming the district court's denial, the *Perez* court cited, among other authorities, "*Calderón–Serra v. Wilmington Trust Co.,* 715 F.3d 14, 19–20 (1st Cir. 2013) (affirming denial of motion for leave to amend in light of eleven-month delay); *Villanueva v. United States,* 662 F.3d 124, 127 (1st Cir. 2011) (per curiam) (affirming finding of undue delay when only four months had elapsed before motion was filed)." Additional cases are readily identified. For example, in *Champion Mortgage*, Judge Lindsay denied leave to amend at the motion-to-dismiss stage of the litigation. In *Champion Mortgage*, as here, the rejected amendment would have occurred nine months after a previous amendment, and would have been based on a "factual predicate" known to the plaintiff long earlier. *Id.* at 31. The First Circuit rejected the plaintiff's argument that denial of leave to amend was an abuse of discretion. *Champion Mort.*, 465 F.3d at 31. Similarly, in *Kay v. New Hampshire Democratic Party*, 821 F.2d 31, 34 (1st Cir. 1987), also cited in *Perez*, the court found that the plaintiff's "undue delay" warranted denial of a motion for leave to amend. In *Kay*, as here, the plaintiff sought to add to the complaint "facts [] elicited during discovery that threw new light on matters." The First Circuit held that the plaintiff's "delay of almost three months in moving for amendment" was "a justifiable basis for denial." This Court,

similarly, would be well within its "wide discretion" in denying this Motion on the basis of undue delay. *Champion Mort.*, 465 F.3d at 31.

## 2. Plaintiffs' Delay Is Unfairly Prejudicial To KPMG-HK.

Unfair prejudice, caused by the plaintiff's delay, also is a sound basis for denying leave to amend. *See*, *e.g.*, *Acosta-Mestre v. Hilton Int'l of Puerto Rico, Inc.*, 156 F.3d 49, 53 (1st Cir. 1998) ("Rule 15(a)'s liberal amendment policy seeks to serve justice, but does not excuse a lack of diligence that imposes additional and unwarranted burdens on an opponent and the courts."); *see also In re iBasis, Inc. Derivative Litig.*, 551 F. Supp. 2d 122, 125 (D. Mass. 2008) (Woodlock, J.) (denying leave to amend after motion to dismiss where "[t]he Defendants will, at a minimum, be prejudiced if I grant the Plaintiffs' motion because they will incur additional expenses to re-litigate dispositive motion practice . . ..").

Granting Plaintiffs' belated motion to amend would "impose[] additional and unwarranted burdens" on KPMG-HK. While Plaintiffs sat on the documents that they now propose to make into a fourth version of the complaint, KPMG-HK was spending significant time and money to defend itself against the third version. KPMG-HK timely filed its motion to dismiss on April 4, 2014—6 weeks *after* Plaintiffs received the documents subject to this Motion. After Plaintiffs sought and received an extension to oppose the motion to dismiss, KPMG-HK filed a reply brief in support of its motion on June 16, 2014—4 months *after* Plaintiffs received the documents. As the Court can see from the memorandum and reply brief submitted, the work and expense involved in briefing the motion to dismiss was substantial.

Plaintiffs' actions in this case have hardly been "just, speedy, and inexpensive." Motion at 13 (quoting Fed. R. Civ. P. 1). In addition to filing three complaints in this action (and now a proposed fourth), Plaintiffs have filed a copycat suit against KPMG-HK in U.S. District Court in Nevada. No. 3:14-cv-00133-LRH-VPC (D. Nev. filed Mar. 13, 2014). The Nevada complaint

9

has identical parties and essentially identical allegations as the Second Amended Complaint in this action, and as such it is obviously improper.[4]

This is *not* a situation where both parties are content to "spend whatever it takes." KPMG-HK has filed nothing but its motions to dismiss the various iterations of the complaint. KPMG-HK has repeatedly offered to enter into mediation with Plaintiffs. Goldman Decl. ¶ 4. Plaintiffs have refused. Plaintiffs also have failed to respond to KPMG-HK's offer in settlement. *Id.* at ¶ 5. Against this background, Plaintiffs' delay in filing its proposed third amended complaint has unfairly prejudiced KPMG-HK by causing significant, avoidable litigation costs. *See In re iBasis*, 551 F. Supp. 2d at 125.[5]

---

[4] In order to minimize litigation costs, KPMG-HK assented to stay the Nevada action until this case is resolved. Dkt. no. 16 in *Miller Inv. Trust et al. v. KPMG*, No. 3:14-cv-00133-LRH-VPC (D. Nev. Dec. 23, 2014).

[5] It is no answer that Plaintiffs propose to alter the Rules to avoid full briefing on their proposed amended complaint. Plaintiffs apparently would like to reverse the order of briefing, such that they argue why their complaint should *not* be dismissed, and then KPMG-HK has an opportunity to argue that it should. *See* Motion at 13-14. While such an approach might avoid the expense of a reply brief by KPMG-HK, it would be contrary to Rule 12 (and likely Local Rule 7 as well). The Rules contemplate the presentation of a complete complaint, followed by an opportunity to move for dismissal. *See also* n.1 *supra*. Plaintiffs cite several cases where motions to amend filed during pendency of motions to dismiss have been considered in conjunction with the pending motion. Motion at 13. These decisions do not help Plaintiffs. Rather, they support the uncontroversial principles that a motion to amend may be denied as futile if the amendment would fail under Rule 9(b) or Rule 12(b)(6) and that a motion to dismiss may be adjudicated if an intervening amended complaint "does not make any material changes to the contentions placed at issue by the motions previously filed." *Shah v. Holloway*, No. 07-10352-DPW, 2008 WL 3824788, at *1 (D. Mass. July 28, 2008) (Woodlock, J.). Plaintiffs cite no precedent that would allow them to short-circuit KPMG-HK's procedural right to be confronted with a single, complete complaint, and to have an opportunity to respond to that complaint.

Respectfully submitted January 29, 2015

/s/ Steven W. Hansen
Steven W. Hansen, BBO #220820
  steven.hansen@morganlewis.com
Jeff Goldman, BBO #660870
  jeff.goldman@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
One Federal Street
Boston, MA 02110
617.951.8000

Jeffrey Q. Smith, *pro hac vice*
  Jeffrey.smith@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
399 Park Ave.
New York, NY 10022
212.705.7000

*Attorneys for Defendant KPMG-HK*