# EXHIBIT 3

1  CAMPBELL & WILLIAMS
   Donald J. Campbell
2  Nevada Bar # 1216
   J. Colby Williams
3  Nevada Bar # 5549
   700 S. Seventh Street
4  Las Vegas, NV  89101
   Telephone:  (702) 382-5222
5  Facsimile:  (702) 382-0540
   Email:  djc@campbellandwilliams.com
6          jcw@campbellandwilliams.com

7  BINGHAM MCCUTCHEN LLP
   Edward S. Kim (*Admitted Pro Hac Vice*)
8  (CA Bar #192856)
   Craig A. Taggart (*Admitted Pro Hac Vice*)
9  (CA Bar #239168)
   600 Anton Boulevard
10 Suite 1800
   Costa Mesa, California  92626-7653
11 Telephone:  714.830.0600
   Facsimile:  714.830.0700
12 Email:  edward.kim@bingham.com
           craig.taggart@bingham.com
13
   BINGHAM McCUTCHEN LLP
14 Geoffrey F. Aronow (*Admitted Pro Hac Vice*)
   (DC Bar #362321)
15 2020 K Street NW
   Washington, DC 20006-1806
16 Telephone:  (202) 373-6000
   Facsimile:  (202) 373-6001
17 Email:  geoffrey.aronow@bingham.com

18 Attorneys for Defendant KPMG

19

20                    UNITED STATES DISTRICT COURT

21                        DISTRICT OF NEVADA

22

23
   OAKTREE CAPITAL MANAGEMENT, L.P.,        Case No. 12-CV-00956-JCM-(GWF)
24 on behalf of its managed funds and accounts,
   LAZARD ASSET MANAGEMENT LLC, on          **KPMG HK'S MOTION TO DISMISS**
25 behalf of its managed funds and accounts,   **AND MEMORANDUM OF POINTS**
   ANGELO, GORDON & CO., L.P., ZAZOVE       **AND AUTHORITIES IN SUPPORT OF**
26 ASSOCIATES LLC, on behalf of certain of its  **MOTION TO DISMISS**
   managed funds and accounts, CNH
27 PARTNERS, LLC, ADVENT CAPITAL           Judge:      The Honorable James C.
   MANAGEMENT, LLC, AQR CAPITAL                        Mahan
28 MANAGEMENT, LLC, and HFR CA

A/75093083.5

1   LAZARD RATHMORE MASTER TRUST,

2           Plaintiffs,

3           v.

4   KPMG, KPMG INTERNATIONAL
    COOPERATIVE, KPMG LLP, HANSEN,
5   BARNETT & MAXWELL, P.C., and
    MORGAN STANLEY & CO.,
6
            Defendants.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

A/75093083.5

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................................................ 1

II.  SUMMARY OF ALLEGATIONS ...................................................................... 4

     A.   ShengdaTech Issues 6.0% and 6.5% Notes ............................................. 4

     B.   KPMG HK Discovers Discrepancies and Unexplained Issues During The
          Audit of the Company's 2010 Financial Statements and Subsequently
          Withdraws as the Company's Auditor Prior to Completing the Audit ................. 5

     C.   Plaintiffs' Claims Against KPMG HK ...................................................... 6

III. PLAINTIFFS FAIL IN SEVERAL WAYS TO STATE A CLAIM FOR
     VIOLATION OF SECTION 18 OF THE EXCHANGE ACT AGAINST KPMG
     HK ...................................................................................................................... 7

     A.   Plaintiffs Fail to Differentiate Their Allegations Against Separate KPMG
          Entities, in Violation of FRCP 9(b) and Rule 8 ...................................... 8

     B.   Plaintiffs Fail to Plead Falsity Sufficiently .......................................... 10

     C.   Plaintiffs Fail to Plead Reliance Sufficiently ........................................ 14

     D.   Plaintiffs Fail to Plead Loss Causation Sufficiently ............................. 16

IV.  THE COURT SHOULD DISMISS PLAINTIFFS' STATE LAW CLAIMS FOR
     LACK OF JURISDICTION IF IT DISMISSES THE SECTION 18 CLAIMS ................ 18

V.   PLAINTIFFS' CLAIMS UNDER CALIFORNIA AND CONNECTICUT STATE
     LAW SHOULD BE DISMISSED BECAUSE THEY ARE PRECLUDED UNDER
     THE SECURITIES LITIGATION UNIFORM STANDARDS ACT ............................. 19

VI.  PLAINTIFFS FAIL TO STATE A CLAIM FOR VIOLATION OF CALIFORNIA
     CORPORATIONS CODE SECTION 25504.2 .................................................... 21

     A.   Plaintiffs Fail to Plead a Primary Violation .......................................... 21

     B.   Plaintiffs Fail to Plead Written Consent ................................................ 22

     C.   Plaintiffs Fail to Plead Falsity and Reliance ......................................... 23

VII. PLAINTIFFS FAIL TO STATE A CLAIM FOR VIOLATIONS OF
     CONNECTICUT'S SECURITIES ACT .............................................................. 24

     A.   Plaintiffs Fail to Plead a Primary Violation .......................................... 24

     B.   Plaintiffs Fail to Allege that KPMG HK Materially Assisted Any Sale of
          Securities ................................................................................................ 25

VIII. PLAINTIFFS' NEGLIGENT MISREPRESENTATION CLAIM SHOULD BE
      DISMISSED ...................................................................................................... 26

     A.   Plaintiffs' Claims Should Be Dismissed to the Extent They Are Based on
          Assigned Claims ..................................................................................... 26

     B.   Plaintiffs Fail to Allege that KPMG HK Owed Them Any Duty ......... 27

     C.   Plaintiffs Fail to Allege that KPMG HK Did Not Exercise Reasonable Care ...... 29

     D.   Plaintiffs Fail to Allege an Untrue Statement, Reliance and Causation .............. 29

-i-

IX.    CONCLUSION .................................................................................................... 30

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Amorosa v. Ernst & Young LLP*,
    682 F. Supp. 2d 351 (S.D.N.Y. 2010) .................................................................. 16

*Argent Classic Convertible Arbitrage Fund L.P. v. Rite Aid Corp.*,
    315 F. Supp. 2d 666 (E.D. Pa. 2004) .................................................................. 16

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................ 4, 8

*Carlsbad Technology, Inc. v. HIF Bio, Inc.*,
    556 U.S. 635 (2009) ............................................................................................ 18

*Carnegie-Mellon Univ. v. Cohill*,
    484 U.S. 343 (1988) ............................................................................................ 18

*Copper Sands Homeowners Ass'n. Inc. v. Copper Sands Realty, LLC*,
    2:10-CV-00510-GMN, 2012 WL 987996 (D. Nev. Mar. 20, 2012) .................... 27

*Corazon v. Aurora Loan Services, LLC*,
    11-00542 SC, 2011 WL 1740099 (N.D. Cal. May 5, 2011) ................................ 9

*Crimi v. Barnholt*,
    C 08-02249 CRB, 2008 WL 4287566 (N.D. Cal. Sept. 17, 2008) ...................... 19

*DeBlasio v. Merrill Lynch & Co., Inc.*,
    No. 07 Civ 318(RJS), 2009 WL 2242605 (S.D.N.Y. July 27, 2009) .................... 9

*Deephaven Private Placement Trading Ltd. v. Grant Thornton & Co.*,
    454 F.3d 1168 (10th Cir. 2006) .................................................................. 8, 11, 12

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006) ................................................................................ 18

*Durham v. Whitney Info. Network, Inc.*,
    No. 06-CV-00687, 2009 WL 3783375 (M.D. Fla. Nov. 10, 2009) ...................... 16

*Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*,
    595 F. Supp. 2d 1253 (M.D. Fla. 2009) .............................................................. 13

*Employers Ins. of Wausau v. Musick, Peeler, & Garrett*,
    871 F. Supp. 381 (S.D. Cal. 1994) ...................................................................... 21

*First Nat. Bank of Commerce v. Monco Agency Inc.*,
    911 F.2d 1053 (5th Cir. 1990) .............................................................................. 1

-iii-

A/75093083.5

*Fisher v. APP Pharmaceuticals, LLC*,
783 F. Supp. 2d 424 (S.D.N.Y. 2011) .......................................................................... 9

*Hildes v. Andersen*,
08-CV-0008-BEN RBB, 2010 WL 4811975 (S.D. Cal. Nov. 8, 2010) ................................ 18

*IM Partners v. Debit Direct Ltd.*,
394 F. Supp. 2d 503 (D. Conn. 2005) .......................................................................... 24

*In re Adelphia Communications Corp. Sec. & Derivative Litig.*,
03 MDL 1529 LMM, 2011 WL 5337149 (S.D.N.Y. Nov. 4, 2011) ................................ 14, 21

*In re AgriBioTech, Inc.*,
319 B.R. 207 (D. Nev. 2004) .................................................................................... 27

*In re AOL Time Warner, Inc. Sec. Litig.*,
503 F. Supp. 2d 666 (S.D.N.Y. 2007) .......................................................................... 16

*In re Lehman Bros Sec. & Erisa Litig.*,
799 F. Supp. 2d 258 (S.D.N.Y. 2011) .......................................................................... 12

*In re Party City Sec. Litig.*,
147 F. Supp. 2d 282 (D.N.J. 2001) .............................................................................. 12

*In re Redback Networks, Inc. Sec. Litig.*,
329 F. App'x 715 (9th Cir. 2009) ............................................................................... 16

*In re Silicon Graphics Inc. Sec. Litig.*,
183 F.3d 970 (9th Cir. 1999), ................................................................................. 12

*In re Stone & Webster, Inc., Securities Litigation*,
414 F.3d 187 (1st Cir. 2005) ...................................................................................... 8

*In re. Supreme Specialties, Inc., Sec. Litig.*,
438 F.3d 256 (3d Cir. 2006) ...................................................................................... 15

*In re Washington Mut., Inc. Sec., Derivative, & ERISA Litig.*,
No. 2:08-md-01919-MJP, 2010 WL 1734848 (W.D. Wash. April 28, 2010) ........... 15, 21, 27

*Int'l Fund Mgmt. S.A. v. Citigroup Inc.*,
822 F. Supp. 2d 368 (S.D.N.Y. 2011) .......................................................................... 15

*Kelley v. Rambus, Inc.*,
C 07-1238JFHRL, 2008 WL 5170598 (N.D. Cal. Dec. 9, 2008), .............................. 8, 14, 15

*Kelley v. Rambus, Inc.*,
No. C 07-01238 JF, 2008 WL 1766942 (N.D. Cal. April 17, 2008) ...................................... 30

*LaSala v. Bordier et Cie*,
519 F. 3d 121 (3d Cir. 2008) .............................................................................. 19, 20

-iv-

A/75093083.5

*Lindner Dividend Fund, Inc. v. Ernst & Young*,
    880 F. Supp. 49 (D. Mass. 1995) ........................................................................... 13

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
    540 F.3d 1049 (9th Cir. 2008) ............................................................................... 16

*Neilson v. Union Bank of Cal., N.A.*,
    290 F. Supp. 2d 1101 (C.D. Cal. 2003) .............................................................. 26

*Nordica USA, Inc. v. Deloitte & Touche, LLP*,
    839 F. Supp. 1082 (D. Vt. 1993) .......................................................................... 29

*Nuevo Mundo Holdings v. PriceWaterhouse Coopers LLP*,
    No. 03 Civ. 0613, 2004 WL 112948 (S.D.N.Y. Jan. 22, 2004) ............................ 10

*Pace v. Bidzos*,
    C 07-3742PJH, 2007 WL 2908283 (N.D. Cal. Oct. 3, 2007) ............................... 19

*Parker & Parsley Petroleum Co. v. Dresser Indus.*,
    972 F.2d 580 (5th Cir. 1992) ................................................................................ 18

*Poptech, L.P. v. Stewardship Inv. Advisors, LLC*,
    849 F. Supp. 2d 249 (D. Conn. 2012) .................................................................. 26

*Reese v. BP Exploration (Alaska) Inc.*,
    643 F.3d 681 (9th Cir. 2011) ................................................................................ 12

*Spotts v. Humphrey*,
    310CV00058(PCD), 2010 WL 2388454 (D. Conn. June 9, 2010) ........................ 24

*Story-McPherson v. Bank of Am., N.A.*,
    2:11-CV-01470-KJD, 2012 WL 2000693 (D. Nev. June 5, 2012) .................. 26, 29

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) .................................................................................. 9

*Tate v. Univ. Med. Ctr. of S. Nev.*,
    2:09-CV-1748-LDG RJJ, 2010 WL 3829221 (D. Nev. Sept. 24, 2010) ................. 9

*Tene v. BAC Home Loan Servicing LP*,
    2:11-CV-01095-KJD, 2012 WL 222920 (D. Nev. Jan. 25, 2012) ........................ 26

**STATE CASES**

*Barmettler v. Reno Air, Inc.*,
    114 Nev. 441, 956 P.2d 1382 (Nev. 1998) .......................................................... 27

*Bethlehem Steel Corp. v. Ernst & Whinney*,
    822 S.W.2d 592 (Tenn. 1991) .............................................................................. 28

A/75093083.5

*Bily v. Arthur Young & Co.*,
   3 Cal. 4th 370, 834 P.2d 745 (Cal. 1992) ................................................... 27, 28, 29

*Connecticut Nat. Bank v. Giacomi*,
   242 Conn. 17, 699 A.2d 101 (Conn. 1997) ................................................... 24, 25

*Grant Thornton LLP v. Prospect High Income Fund*,
   314 S.W.3d 913 (Tex. 2010) ............................................................................ 27

*Industrial Indemnity Co. v. Touche Ross & Co.*,
   13 Cal. App. 4th 1086, 17 Cal. Rptr. 2d 29 (Cal. App. Ct. 1993) ......................... 28

*Nutmeg Securities, Ltd. v. McGladrey & Pullen*,
   92 Cal. App. 4th 1435, 112 Cal. Rptr. 2d 657 (Cal.App. Ct. 2001) ..................... 28

*Nycal Corp. v. KPMG Peat Marwick LLP.*,
   426 Mass. 491, 688 N.E.2d 1368 (Mass. 1998) ............................................ 27, 28

*Ret. Programs for Employees of Town of Fairfield v. NEPC, LLC*,
   X08CV095013326S, 2011 WL 6934794 (Conn. Super. Ct. Dec. 8, 2011) ............ 28

*Western Sec. Bank v. Eide Bailly LLP*,
   359 Mont. 34, 249 P.3d 35 (Mont. 2010) ........................................................ 27

**FEDERAL STATUTES**

15 U.S.C. § 77bb(f)(5)(E) ...................................................................................... 19

15 U.S.C. § 78bb ................................................................................................... 19

15 U.S.C. § 78bb(f)(3)(A)(i) .................................................................................. 20

15 U.S.C. § 78bb(f)(5)(B)(i) .................................................................................. 19

15 U.S.C. § 78u–4(b)(1)(B) ................................................................................... 12

28 U.S.C. § 1367(c) ............................................................................................... 18

15 USC § 78r(a) ........................................................................................... Passim

**STATE STATUTES**

Cal. Corp. Code § 25005 ....................................................................................... 22

Cal. Corp. Code § 25504.2(a)(1) & (2) .............................................................. 21, 23

Conn. Gen. Stat. § 36b–29 ................................................................................... 6, 24

**RULES**

FRCP 8 ......................................................................................................... 1, 8, 9

FRCP 9(b) ............................................................................................................ Passim

FRCP 12(b)(6) .............................................................................................................. 4

**REGULATIONS**

10 California Code of Regulations § 260.504.2.2(e) ................................................... 22

**OTHER AUTHORITIES**

Restatement (Second) of Torts § 552 (1977) ............................................................. 27

California Corporate Securities Laws § 14.03 (Matthew Bender 2010) ..................... 23

-vii-

A/75093083.5

Defendant KPMG, a Hong Kong partnership ("KPMG HK"), by and through its attorneys, Campbell & Williams and Bingham McCutchen LLP, hereby submits this memorandum of points and authorities and moves this Court pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(6) for an order dismissing the claims asserted against KPMG HK in Plaintiffs' Complaint.

## I. INTRODUCTION

Plaintiffs' Complaint against KPMG HK fails as a matter of law because it relies wholly on conclusory assertions without alleging the facts necessary to sustain the purported claims. KPMG HK served as the independent auditor for ShengdaTech, Inc. ("ShengdaTech" or the "Company") and audited the Company's 2008 and 2009 financial statements. Plaintiffs' claims against KPMG HK are based on the assertion that KPMG HK's audit opinions on ShengdaTech's 2008 and 2009 financial statements were false at the time those opinions were issued. Plaintiffs assert two claims under Section 18 of the Securities Exchange Act of 1934 and several blue sky and common law claims to recover losses they allegedly incurred after purchasing ShengdaTech, Inc.'s 6.0% and 6.5% Notes. However, the 6.0% Notes Offering Memorandum contained no KPMG HK audit report or any other statement by KPMG HK. In any event, Plaintiffs fail to plead any facts at all about either of KPMG HK's audits at issue, the procedures it performed or why the audit opinions it reached were false at the time the audit opinions were issued. Instead, Plaintiffs substitute hindsight and conjecture to assert unsupported conclusions. This falls well short of the pleading standards that apply to Plaintiffs' claims.

Plaintiffs' Section 18 claims fail to satisfy the applicable pleading standards of the Private Securities Litigation Reform Act of 1995 ("PSLRA") and FRCP 8 and 9(b). *First*, Section 18 requires Plaintiffs to plead that KPMG HK "made or caused to be made" a statement in ShengdaTech's SEC filings that was "at the time in light of the circumstances under which it was made false and misleading with respect to any material fact." To plead falsity, Plaintiffs must allege sufficient facts establishing that (1) KPMG HK did not conduct its audits in accordance with the standards of the Public Company Accounting Oversight Board ("PCAOB") -- also referred to as U.S. "GAAS," standing for "generally accepted auditing standards" -- and (2) based

- 1 -

on that work, KPMG HK did not have a reasonable basis for reaching its opinion that the Company's financial statements present fairly the financial position of the Company in conformity with Generally Accepted Accounting Principles ("GAAP"). Yet, the Complaint pleads no facts regarding what audit procedures KPMG HK performed and why its audits were not in accordance with the applicable standards. Nor do Plaintiffs allege any facts establishing KPMG HK did not have a reasonable basis for reaching its opinions on the Company's 2008 and 2009 financial statements. The absence of such basic factual allegations in Plaintiffs' Complaint renders the claims defective as a matter of law.

*Second*, Plaintiffs fail to plead the necessary facts establishing that they relied on KPMG HK's audit opinions. Section 18 requires actual reliance, and conclusory assertions that Plaintiffs relied on the alleged statements are insufficient. In fact, even though Plaintiffs allege that they were assigned certain of the claims set forth in the Complaint, Plaintiffs plead no facts regarding the identities of the assignors, let alone facts regarding what the assignors actually relied upon when purchasing the ShengdaTech Notes.

*Third*, Plaintiffs' Section 18 claims are also defective because they fail to plead loss causation. Plaintiffs do not allege any facts establishing that the revelation of the truth of any alleged KPMG HK misstatement affected the price of the ShengdaTech Notes that Plaintiffs purchased. Plaintiffs allege only that the market learned of potential financial discrepancies as revealed by KPMG HK's audit work in connection with the Company's 2010 financial statements, an audit KPMG HK never completed. Plaintiffs allege no facts establishing that the market understood those potential financial discrepancies to indicate that KPMG HK's prior audit opinions on the Company's 2008 and 2009 financial statements were false at the time those opinions were issued.

Plaintiffs' state law claims fare no better than their Section 18 claims. As a threshold matter, the Plaintiffs' only basis for federal jurisdiction is their defective Section 18 claims, and should those claims be dismissed, the Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims.

A/75093083.5

Even if the Court declines to dismiss Plaintiffs' state law claims on jurisdictional grounds, it should dismiss Plaintiffs' state law claims because a federal statute bars those claims. They also fail to allege sufficient facts to sustain the claims.

First, the Securities Litigation Uniform Standards Act ("SLUSA") bars state law claims brought on behalf of 50 or more persons alleging misstatements or omissions in connection with the purchase or sale of securities. Plaintiffs include at least 53 investors and investment managers and thus surpass this threshold. Second, Plaintiffs fail to allege facts necessary to sustain their state law claims. Plaintiffs' California Corporations Code claim fails because Plaintiffs (1) have not pleaded a primary violation against any seller; (2) have not, and cannot, allege that KPMG HK provided the requisite written consent to the California Commissioner of Business Oversight under the California Corporations Code; (3) have not sufficiently pleaded that KPMG HK made any misstatement of material fact; and (4) have not sufficiently pleaded reliance. Similarly, Plaintiffs' Connecticut Uniform Securities Act claim fails because Plaintiffs have not pleaded a primary violation, and Plaintiffs fail to allege sufficiently facts establishing that KPMG HK "materially assisted" the sale of any of the ShengdaTech Notes.

Finally, Plaintiffs' negligent misrepresentation claim also fails as a matter of law. Plaintiffs fail to allege sufficiently that (1) KPMG HK owed any duty to Plaintiffs; (2) KPMG HK made a material misstatement; (3) KPMG HK did not have a reasonable basis for its audit opinions; (4) they relied on KPMG HK's misstatement in purchasing the ShengdaTech Notes and (5) the revelation of the truth of KPMG HK's 2008 and 2009 audit opinions proximately caused Plaintiffs' losses.

For those reasons and as demonstrated below, KPMG HK respectfully requests that the Court dismiss Plaintiffs' claims against KPMG HK in their entirety.

## II.    SUMMARY OF ALLEGATIONS[1]

Plaintiffs' Complaint is brought on behalf of eight separate investment managers that, in turn, bring claims on behalf of investment funds they manage and on behalf of clients "on whose behalf it purchased Notes during the Loss Period and from whom it has received valid assignments of claims pertaining to the Notes." Compl. ¶¶ 1, 17-24. Plaintiffs' Complaint asserts claims against five separate defendants relating to Plaintiffs' and their assignors' alleged purchases of ShengdaTech's 6.0% and 6.5% Notes in the initial offerings and in the secondary market. Compl. ¶ 1.

### A.    ShengdaTech Issues 6.0% and 6.5% Notes

ShengdaTech is a Nevada corporation with its principal place of business in China. Compl. ¶ 31. ShengdaTech went public in late March 2006 and began trading on NASDAQ in early 2007. Compl. ¶ 33-34. ShengdaTech conducted two private offerings of debt securities available only to qualified institutional buyers beginning in 2008. Compl. ¶ 35. In early 2008, ShengdaTech issued its 6.0% Notes Offering, which was conducted pursuant to the 6.0% Notes Offering Memorandum; that Memorandum incorporated ShengdaTech's 2007 financial statements. *Id*. Hansen, Barnett & Maxwell, P.C. ("Hansen") audited ShengdaTech's 2007 financial statements, issued an unqualified opinion and consented to the inclusion of its audit opinion in the 6.0% Notes Offering Memorandum. *Id*. There is no allegation that KPMG HK performed any work in connection with ShengdaTech's 2007 financial statements or had anything to do with the 6.0% Notes Offering.

On December 10, 2010, ShengdaTech announced that it had entered into a purchase agreement with Morgan Stanley relating to an offering of $130,000,000 of 6.5% Notes. Compl. ¶ 36. Morgan Stanley underwrote the 6.5% Notes Offering pursuant to the 6.5% Notes Offering Memorandum, which incorporated ShengdaTech's 2007, 2008 and 2009 financial statements.

---

[1] As required under FRCP 12(b)(6), KPMG HK assumes for purposes of this motion the truth of the factual allegations in the Complaint. However, neither the Court nor KPMG HK is required to assume the truth of the legal conclusions in the Complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.")

- 4 -

Compl. ¶ 37.  Plaintiffs allege that Hansen consented to the inclusion of its 2007 audit opinion, and that KPMG HK consented to the inclusion of its 2008 and 2009 audit opinions, in the 6.5% Notes Offering Memorandum.  *Id.*  Plaintiffs also allege that the 6.5% Notes Offering Memorandum included unaudited financial information, "which the investing public understood to have been reviewed by Morgan Stanley as the underwriters of the 6.5% Notes Offering and the initial purchasers of the 6.5% Notes."  *Id.*

**B.**  **KPMG HK Discovers Discrepancies and Unexplained Issues During The Audit of the Company's 2010 Financial Statements and Subsequently Withdraws as the Company's Auditor Prior to Completing the Audit**

Plaintiffs allege that on March 15, 2011, ShengdaTech announced that KPMG HK discovered "'potentially serious discrepancies and unexplained issues relating to the Company's and its subsidiaries' financial records'" in the course of its 2010 audit work.  Compl. ¶ 64. Plaintiffs allege that ShengdaTech appointed a Special Committee, the Special Committee hired O'Melveny & Meyers LLP to conduct an internal investigation and ShengdaTech announced that it would not timely file its 2010 Form 10-K.  *Id.*  On April 29, 2011, ShengdaTech filed a "Form 8-K with the SEC attaching a press release in which ShengdaTech disclosed that NASDAQ had informed the Company on April 20, 2011 that it was going to delist its shares."  Compl. ¶ 65.

On May 5, 2011,

> ShengdaTech filed another Form 8-K with the SEC in which it announced that KPMG had resigned, effective April 29, 2011. KPMG, as disclosed in this 8-K, had informed the Company in a letter dated April 19, 2011, that ShengdaTech's senior management had not taken . . . timely and appropriate remedial action with respect to the discrepancies and issues KPMG had identified in the course of its 2010 audit.

Compl. ¶ 66.  ShengdaTech's May 5, 2011 Form 8-K also stated, among other things, that ShengdaTech was "informed by KPMG" that "disclosures should be made and action should be taken to prevent future reliance on their previously issued audit reports related to the consolidated balance sheets of ShengdaTech, Inc . . . as of December 31, 2008 and 2009."  Compl. ¶ 67.  The

A/75093083.5

Form 8-K further explained that "KPMG stated that the manner of management's conduct during the investigation by a special committee . . . raised doubts about management's representations provided to KPMG in connection with KPMG's 2008 and 2009 audits . . . ." *Id.* KPMG HK had not completed its audit work or issued an audit opinion on ShengdaTech's 2010 financial statements prior to its resignation.

Plaintiffs allege that on June 9, 2011, ShengdaTech announced that it would be defaulting on its obligations to the holders of the 6.0% Notes. Compl. ¶ 69. Further, on June 15, 2011, ShengdaTech became obligated to pay interest on the 6.5% Notes in an amount of $4.4 million, but has not paid any portion of the interest. Compl. ¶ 70.

### C. Plaintiffs' Claims Against KPMG HK

Plaintiffs assert claims against three separate KPMG entities: KPMG HK, KPMG International Cooperative and KPMG LLP. Compl. ¶¶ 25-28. KPMG HK is a Hong Kong Partnership organized under Hong Kong law. KPMG LLP is a United States limited liability partnership, and KPMG International is a Swiss entity with which the member firms of the KPMG network of independent firms are affiliated. Plaintiffs define all three of these separate entities together as "KPMG," yet Plaintiffs also separately define the term "KPMG" as "KPMG Hong Kong." Compl. ¶¶ 3, 26. Plaintiffs use the defined term "KPMG" in their "Factual Allegations" in the Complaint, but do not specify whether they are referring solely to KPMG HK or all of the KPMG defendants collectively.

In any event, Plaintiffs' Complaint asserts five claims against KPMG HK: (1) Plaintiffs' second claim asserts a violation of Section 18 of the Exchange Act for alleged false statements in ShengdaTech's 2008 10-K; (2) Plaintiffs' third claim asserts a violation of Section 18 of the Exchange Act for alleged false statements in ShengdaTech's 2009 10-K and 2009 10-K/A; (3) Plaintiffs' sixth claim is for negligent misrepresentation for alleged false statements in the 6.5% Notes Offering Memorandum; (4) Plaintiffs' tenth claim is for violation of California Corporations Code section 25504.2 for alleged false statements in the 6.5% Notes Offering Memorandum; and (5) Plaintiffs' twelfth claim is for violation of Connecticut Uniform Securities

Act section 36b-29(a) for alleged false statements in the 6.5% Notes Offering Memorandum.

Plaintiffs' allegations against KPMG HK are made entirely on "information and belief." Compl. ¶ 1.  Plaintiffs allege that KPMG HK consented to the inclusion of its 2008 and 2009 audit opinions in the 6.5% Notes Offering Memorandum, but they do not claim that KPMG HK's audit opinions were incorporated into the 6.0% Notes Offering Memorandum, which was issued in 2008 before KPMG HK had even conducted any audits of ShengdaTech, let alone issued its 2008 and 2009 audit opinions.  Compl. ¶¶ 35, 50, 54.  Nor does the Complaint otherwise link KPMG HK to the 6.0% Notes offering.

Plaintiffs' allegations against KPMG HK are based solely on the alleged "false statements" that they allege KPMG HK made in its 2008 and 2009 audit opinions.  Specifically, KPMG HK's 2008 and 2009 audit opinions stated that KPMG HK had audited ShengdaTech's financial statements "in accordance with the standards of the Public Company Accounting Oversight Board (United States)," and that based on that work, KPMG HK's opinion was that the financial statements "present fairly, in all material respects, the financial position" of ShengdaTech under U.S. GAAP.  Compl. ¶¶ 50, 54.  Plaintiffs also allege that KPMG HK's 2009 internal control opinion was false, which states, in pertinent part: "*In our opinion*, ShengdaTech, Inc. maintained, in all material respects, effective internal control over financial reporting as of December 31, 2009 . . . ."  Compl. ¶ 55 (emphasis added).

## III. PLAINTIFFS FAIL IN SEVERAL WAYS TO STATE A CLAIM FOR VIOLATION OF SECTION 18 OF THE EXCHANGE ACT AGAINST KPMG HK

Plaintiffs assert two Section 18 claims against KPMG HK for alleged misstatements that KPMG HK made in (1) its 2008 audit opinion that was included in ShengdaTech's 2008 Form 10-K and (2) its 2009 audit opinion that was included in ShengdaTech's 2009 Forms 10-K and 10-K/A.  To succeed with such claims, Plaintiffs must plead and prove that "(1) the defendant made or caused to be made a statement of material fact that was false or misleading at the time and in light of the circumstances under which it was made, (2) the statement was contained in a

A/75093083.5

document filed pursuant to the Exchange Act or any rule or regulation thereunder, (3) reliance on the false statement, and (4) resulting loss to the plaintiff." *Deephaven Private Placement Trading Ltd. v. Grant Thornton & Co.,* 454 F.3d 1168, 1171 (10th Cir. 2006).

Plaintiffs' Section 18 claim must satisfy the PSLRA's heightened pleading standard and FRCP 9(b)'s particularity requirements. *Deephaven,* 454 F.3d at 1172 (applying PSLRA to Section 18 claim); *In re Stone & Webster, Inc., Securities Litigation,* 414 F.3d 187, 194 (1st Cir. 2005) (same); *Kelley v. Rambus, Inc.,* C 07-1238JFHRL, 2008 WL 5170598, at *2 (N.D. Cal. Dec. 9, 2008) (applying FRCP 9(b) to Section 18 claim), *aff'd,* 384 F. App'x 570 (9th Cir. 2010). Plaintiffs must also satisfy FRCP 8's "plausibility" standard. *Iqbal,* 556 U.S. at 678. Under the plausibility standard, the Court must strip the Complaint of all "legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The Court must then determine whether the Complaint states a "plausible claim for relief." *Id.* at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* Plaintiffs offer nothing more than conclusions on "information and belief," which are insufficient under the PSLRA, FRCP 9(b) and FRCP 8.

The Court should dismiss Plaintiffs' Section 18 claims because (1) in pleading their factual allegations, Plaintiffs improperly lump together separate KPMG entities; (2) Plaintiffs fail to allege sufficiently that KPMG HK made a material false statement in an Exchange Act filing; (3) Plaintiffs fail to plead sufficiently reliance on any alleged KPMG HK misstatement; and (4) Plaintiffs fail to plead loss causation adequately.

## A. Plaintiffs Fail to Differentiate Their Allegations Against Separate KPMG Entities, in Violation of FRCP 9(b) and Rule 8

"Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the

A/75093083.5

fraud.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (citation omitted). "[A] plaintiff must, at a minimum, 'identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme.'" *Id*. at 765. "Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *DeBlasio v. Merrill Lynch & Co., Inc*., No. 07 Civ 318(RJS), 2009 WL 2242605, at *10 (S.D.N.Y. July 27, 2009) ); *see also Fisher v. APP Pharmaceuticals, LLC*, 783 F. Supp. 2d 424, 433 (S.D.N.Y. 2011) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'") (citation omitted).

　　　*DeBlasio* particularly resonates here, where Plaintiffs will undoubtedly attempt to use the alleged relationship between the KPMG entities to muddy the picture. In *DeBlasio,* the court dismissed fraud-based claims against various parent and subsidiary broker dealer defendants -- a much closer relationship than between the KPMG entities in this case -- for failing to comply with FRCP 9(b). The court explained: "In the [complaint], Plaintiffs define five short forms that include pairings of Parent Defendants and Brokerage Defendants: 'Merrill Lynch'. . . , 'Morgan Stanley' . . . However when presenting allegations regarding misstatements and other conduct by Defendants . . . , Plaintiffs attribute all such acts to the respective pairings of Parent and Brokerage Defendants." *DeBlasio*, 2009 WL 2242605 at *13. The court held that "[t]he [complaint's] presentation of allegations in this fashion is insufficient as a matter of law with respect to the claims to which Rule 9(b) is applicable." *Id*.

　　　Even under FRCP 8, "broad and vague allegations as to all defendants fails to provide fair notice to each defendant of the claim for relief pled against the defendant." *Tate v. Univ. Med. Ctr. of S. Nev.*, 2:09-CV-1748-LDG RJJ, 2010 WL 3829221, at *2-3 (D. Nev. Sept. 24, 2010). A defendant cannot be made "to guess which allegations pertain to it." *Corazon v. Aurora Loan Services, LLC*, 11-00542 SC, 2011 WL 1740099, at *4-5 (N.D. Cal. May 5, 2011) (complaint dismissed where plaintiff failed to "indicate which defendant was allegedly responsible for which wrongful act").

　　　Here, Plaintiffs similarly fail to differentiate between the three separate KPMG defendants

in presenting their allegations. After identifying the separate KPMG entities as parties in the Complaint, Plaintiffs define them all together as "KPMG," and fail to specify which KPMG entity they are referring to when presenting their factual allegations. Compl. ¶¶ 3, 25, 27. Such undifferentiated allegations fail to comply with FRCP's notice requirements, let alone FRCP 9(b)'s particularity requirements which in fact apply in this case.

Nor can Plaintiffs shoehorn their pleading into the applicable standards by relying on the fact that the KPMG entities here are involved with a network of accounting firms that use a common name -- KPMG -- as part of their branding. "Member firms in an international accounting association are not part of a single firm and are neither agents nor partners of other member firms simply by virtue of using the same brand name." *Nuevo Mundo Holdings v. PriceWaterhouse Coopers LLP*, No. 03 Civ. 0613, 2004 WL 112948, at *3 (S.D.N.Y. Jan. 22, 2004). Putting aside the failure on the merits of attempting to lump the entities together for purposes of ascribing liability, Plaintiffs cannot bypass their pleading responsibilities to "indicate which defendant was allegedly responsible for which wrongful act." Since Plaintiffs have failed to meet those responsibilities, the Complaint is fatally defective for this reason, among others.

**B.      Plaintiffs Fail to Plead Falsity Sufficiently**

Plaintiffs' Section 18 claims against KPMG HK also fail because Plaintiffs do not sufficiently allege that KPMG HK made a material misstatement in its 2008 and 2009 audit reports. Specifically, Plaintiffs fail to allege that KPMG HK's 2008 and 2009 audit opinions were false at the time they were issued. Instead, Plaintiffs' Section 18 claims appear to be based on the false premise that KPMG HK's audit opinions somehow guaranteed the accuracy of ShengdaTech's 2008 and 2009 financial statements. However, the subsequent discovery of irregularities in a later audit does not, ipso facto, support the conclusory allegation that the prior audit opinions were false at the time they were issued. This reasoning misapprehends the purpose and scope of a financial statement audit and ignores the language, basis and scope of an audit opinion.

In affirming the dismissal of a Section 18 claim against an auditor based on similar

- 10 -

allegations as those made by the Plaintiffs in this case, the court in *Deephaven* debunked these very misapprehensions. First, the court observed: "Investors start with the supposition that when an auditor 'certifies' a company's financial statements, which subsequently prove to contain a materially false or misleading statement, the auditor's certification is itself a false and misleading statement within the meaning of Section 18(a)." *Deephaven*, 454 F.3d at 1173. The court explained why this supposition was misplaced:

> [A]uditors do not "certify" a company's financial statements in the sense that they "guarantee" or "insure" them. [Citations omitted] Nor do they, by virtue of auditing a company's financial statements, somehow make, own or adopt the assertions contained therein. Rather, the end product of an audit is the audit report, which usually contains three concomitant paragraphs: the introduction, the scope and the opinion. A brief overview of these paragraphs, namely the first two, elucidates the relevant context in which [an auditor] rendered its unqualified opinion . . . .

*Id.* at 1174. The court then analyzed the three parts of a standard audit report and parsed the plaintiffs' mistaken interpretation:

> Investors conveniently attempt to read Grant Thornton's opinion that the 1999 financial statements present Daw's financial position fairly in conformity with GAAP as an isolated statement of material fact. That is, Investors attempt to characterize it as a categorical statement separate from its stated basis. The audit report does not, however, allow for such a cropped reading. To the contrary, the audit report must be read in its entirety. When so read, it is readily apparent that the introductory paragraph tethers Grant Thornton's opinion to its stated basis: Grant Thornton's factual assertion that its audits were performed in accordance with GAAS and therefore provide an adequate basis for its opinion. It is against this backdrop that we must assess whether the [Complaint] satisfies the PSLRA's statement-reason-and basis requirements.

*Id.* at 1175-76. Thus, the Court concluded:

> The opinion paragraph, as the term suggests, is stated as an opinion of [the auditor] rather than a statement of absolute fact or a guarantee. Because an [auditor's] opinion is couched in terms of a stated basis, a claim that the former is false or misleading must necessarily specify the reason or reasons why in terms of the latter. Such a showing would, for example, specify how (1) [an auditor] did not actually form its opinion regarding the . . . financial statements based on its audits; or (2) it did not have a reasonable basis for its opinion because it did not plan and perform its audits of the . . . financial statements in accordance with GAAS.

- 11 -

A/75093083.5

1     *Id*. at 1175-76. Many other courts have made this critical connection between the nature of the

2 audit opinion and the resulting requirements for valid allegations of falsity. "[T]o state a claim

3 that an auditor's opinion of GAAP compliance is a factual misstatement . . . the complaint must . .

4 . set forth facts sufficient to warrant a finding that the auditor did not actually hold the opinion it

5 expressed or that it knew that it had no reasonable basis for holding it." *In re Lehman Bros Sec.*

6 *& Erisa Litig.*, 799 F. Supp. 2d 258, 303 (S.D.N.Y. 2011). *See also, e.g.*, *Buttonwood Tree Value*

7 *Partners, LP v. Sweeney*, SACV 10-00537-CJC, 2012 WL 2086607, at *2 (C.D. Cal. June 7,

8 2012) (holding that an auditor's "GAAS assertion and GAAP assertions are matters of opinion"

9 and that "the plaintiff must allege with particularity that the defendant believed his or her opinion

10 was false.").

11     Moreover, where, as here, the allegations Plaintiffs make are based entirely "on

12 information and belief," the PSLRA's standard for pleading falsity is particularly stringent.

13 Plaintiffs must allege "with particularity all facts on which that belief is formed." 15 U.S.C. §

14 78u–4(b)(1)(B); *Reese v. BP Exploration (Alaska) Inc*., 643 F.3d 681, 690 (9th Cir. 2011).

15 "This means [P]laintiff must provide, in great detail, all the relevant facts forming the basis of her

16 belief. It is not sufficient for a plaintiff's pleadings to set forth a belief that certain unspecified

17 sources will reveal, after appropriate discovery, facts that will validate her claim." *In re Silicon*

18 *Graphics Inc. Sec. Litig.*, 183 F.3d 970, 985 (9th Cir. 1999), *superseded by statute on other*

19 *grounds*. "The plain language of the PSLRA dictates that plaintiffs pleading on information and

20 belief set forth each and every event, circumstance, confidential informant, employee or others

21 who supply data which leads to the drafting of the complaint." *In re Party City Sec. Litig*., 147 F.

22 Supp. 2d 282, 304 (D.N.J. 2001).

23     The Complaint fails to meet these tests. Plaintiffs do not plead any facts regarding the

24 actual audit work and procedures KPMG HK performed in connection with its audits of

25 ShengdaTech's 2008 and 2009 financial statements. Instead, Plaintiffs merely make conclusory

26 assertions that "KPMG did not conduct [its] audits in accordance with the standards of the Public

27 Company Accounting Oversight Board." Compl. ¶¶ 52, 57. Plaintiffs provide no factual basis

28

for their conclusion. The Complaint does not identify what procedures KPMG HK did or did not perform during its audits, what information KPMG HK did or did not consider, or which GAAS rules were violated and how such unidentified rules were violated. The absence of such basic factual allegations renders Plaintiffs' claim deficient as a matter of law. *See Lindner Dividend Fund, Inc. v. Ernst & Young*, 880 F. Supp. 49, 58 (D. Mass. 1995) (dismissing Section 18 claim against auditor, finding that "[t]he complaint does not state the actual auditing standards, accounting principles or standards of fair reporting purportedly violated. Nor does the complaint attempt to indicate the manner in which those principles were allegedly disregarded.") (internal citation omitted); *Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*, 595 F. Supp. 2d 1253, 1282 (M.D. Fla. 2009) *aff'd*, 594 F.3d 783 (11th Cir. 2010) (because an auditor's GAAP opinion is based on its GAAS audit, "[a]bsent sufficient allegations of GAAS violations, the plaintiffs' claim . . . fails"). Plaintiffs fail entirely to allege any facts establishing that KPMG HK's 2008 and 2009 audit opinions or its opinions with regard to ShengdaTech's internal controls in 2009 were false at the time they were made.

Plaintiffs' falsity allegations, at bottom, are founded on unsupported speculation that there must have been GAAS and GAAP violations in 2008 and 2009, and thus KPMG HK's opinions must have been falsely stated at the time, because KPMG HK later discovered discrepancies and unexplained issues during its aborted audit work on ShengdaTech's 2010 financial statements. That form of reasoning fails the test, since it does nothing to support the necessary factual predicate that KPMG HK's audit opinions on ShengdaTech's 2008 and 2009 audit opinions were false, and KPMG HK did not have a reasonable basis for them, at the time KPMG HK issued them.

Plaintiffs' allegations concerning the alleged falsity of KPMG HK's opinion contained in its 2009 audit report regarding the effectiveness of ShengdaTech's internal controls over financial reporting fall similarly short. Plaintiffs simply assert the conclusion that KPMG HK's 2009 internal controls opinion was false. Again, they do not allege any facts supporting their conclusion that ShengdaTech's internal controls over financial reporting were "severely

A/75093083.5

deficient" in 2009, let alone any facts establishing that KPMG HK should have discovered those purported deficiencies during its audit of the 2009 financial statements. Compl. ¶ 62.[2]

It simply does not follow that because KPMG HK discovered discrepancies and unexplained errors in connection with its subsequent audit of the Company's 2010 financial statements, that KPMG HK did not conduct GAAS audits on the 2008 and 2009 financial statements and that it did not have a reasonable basis at those times, based on the audits it had performed as of those dates, to express its opinions on the 2008 and 2009 financial statements. Without that missing link, the allegations are not plausible and meet neither the PSLRA nor FRCP 9(b)'s requirements.

## C.   Plaintiffs Fail to Plead Reliance Sufficiently

Plaintiffs' Section 18 claims also fail because they fail to plead sufficiently reliance on KPMG HK's 2008 and 2009 audit opinions. Unlike fraud claims under Section 10(b) of the Securities Exchange Act, "[a] § 18 claimant must allege actual reliance on the relevant misstatements or omissions in purchasing or selling a security, and may not allege constructive or presumed reliance." *Kelley v. Rambus, Inc*., 2008 WL 5170598, at *14. "Section 18 requires actual, or what has sometimes been referred to as 'eyeball,' reliance. Reliance cannot be presumed as in a Section 10(b) claim . . . ." *In re Adelphia Commn's Corp. Sec. & Derivative Litig*., 03 MD 1529 (LMM), 2007 WL 2615928, at *11 (S.D.N.Y. Sept. 10, 2007). Plaintiffs must be able to plead actual, "eyeball" reliance on the particular statement at issue, in this case, KPMG HK's 2008 and 2009 audit opinions. "Conclusory assertions of reliance are insufficient, and plaintiffs must plead facts probative of their actual reliance on any specific false statement in the filings at issue." *Kelley*, 2008 WL 5170598, at *14 (citation omitted).

---

[2] Indeed, Plaintiffs do not even adequately allege that the financial statements themselves violated GAAP or that the internal controls at ShengdaTech in 2009 were in fact materially deficient. Plaintiffs' Complaint makes only the generalized, conclusory allegation that "the 2007, 2008 and 2009 Financial Statements violated GAAP and did not present the Company's financial position fairly or accurately . . . ." Compl. ¶ 57. Plaintiffs similarly make the conclusory assertion that ShengdaTech's "reported results for cash and cash equivalents, total assets, sales of products, and net income were materially misstated." Compl. ¶¶ 49, 53. Plaintiffs, however, fail to allege any facts establishing how ShengdaTech's financial statements violated GAAP or which internal controls were deficient in 2008 and 2009.

In fact, the law requires more than just broad allegations of reliance on particular documents. As the *Kelley* court explained: "Statements to the effect that plaintiffs 'received, reviewed, actually read, and relied upon' certain financial documents, or 'actually read and relied upon them in making their decisions to invest in company common stock,' are inadequate." *Id.* (citations omitted). Simply stating that Plaintiffs reviewed the audit opinion is not enough. As a court found in dismissing a claim against auditors based on a similar assertion of reliance on an audit opinion, "Plaintiffs only suggest that they read the Forms 10-K and Deloitte's certifications, without expressly alleging which documents they read, when they read them or how they impacted their decision to purchase or retain WaMu debt securities." *In re Washington Mut., Inc. Sec., Derivative, & ERISA Litig.*, No. 2:08-md-01919-MJP, 2010 WL 1734848, at *6 (W.D. Wash. April 28, 2010); *accord In re. Supreme Specialties, Inc., Sec. Litig.*, 438 F.3d 256, 284 (3d Cir. 2006) (holding allegations insufficient where plaintiffs alleged they "obtained this document at or about the it [sic] was publicly filed with the SEC, and actually read and relied upon it in making their decisions to invest in Suprema common stock" because they failed "to plead facts probative of their actual reliance on any specific false statements contained in those filings"); *see also Int'l Fund Mgmt. S.A. v. Citigroup Inc.*, 822 F. Supp. 2d 368, 386 (S.D.N.Y. 2011) (dismissing Section 18 claims because the plaintiffs' reliance allegations were "conclusory" and lacked "supporting factual matter indicating *how* plaintiffs relied on the alleged misrepresentations.") (emphasis added).

Plaintiffs do not come close to meeting this exacting standard for pleading reliance on KPMG HK's audit opinions. Plaintiffs merely allege in conclusory fashion that they read and relied on KPMG HK's audit opinions. *See* Compl. ¶¶ 103, 105, 112, 114. But such perfunctory allegations are precisely what the courts have rejected previously as inadequate. Plaintiffs allege no facts regarding when they read the opinions, who read the opinions or how those opinions affected their decisions to purchase the ShengdaTech Notes.

This shortcoming is particularly apparent with regard to Plaintiffs' purchases of 6.0% Notes which occurred before April 1, 2009, when KPMG HK issued its opinion on

- 15 -

ShengdaTech's 2008 financial statements.  *See, e.g.*, Compl. ¶ 2.  Of course, KPMG HK cannot be liable for any purchases that took place before it issued that opinion precisely because Plaintiffs could not have relied on any KPMG HK statement in making those purchases.

Plaintiffs' reliance allegations are also glaringly deficient as to claims arising from the alleged assignments of claims from the actual investors.  Plaintiffs do not mention or provide any facts regarding the assignors' alleged reliance on KPMG HK's opinions at the time the ShengdaTech notes were purchased.  *See* Compl. ¶¶ 103, 105.  Indeed, Plaintiffs do not even identify the assignors, or the date the assignors made the purchases.

In sum, Plaintiffs fail to plead reliance properly; the Court should dismiss their Section 18 claims on this ground as well.

### D.      Plaintiffs Fail to Plead Loss Causation Sufficiently

Plaintiffs' Section 18 claims also fail because Plaintiffs have not adequately pleaded loss causation.  *See, e.g.*, *Argent Classic Convertible Arbitrage Fund L.P. v. Rite Aid Corp.,* 315 F. Supp. 2d 666, 685 (E.D. Pa. 2004) (finding that loss causation is an element of a Section 18 claim); *In re Redback Networks, Inc. Sec. Litig.*, 329 F. App'x 715, 717 (9th Cir. 2009) (affirming dismissal of Section 18 claim for failure to plead loss causation).  To plead loss causation, Plaintiffs must allege that "the practices that the plaintiff[s] contend[] are fraudulent were revealed to the market and caused the resulting losses."  *Metzler Inv. GMBH v. Corinthian Colleges, Inc*., 540 F.3d 1049, 1063 (9th Cir. 2008).  "[I]n cases where, as here, a plaintiff seeks to hold a[n] . . . auditor responsible for primary violations of the securities laws, the plaintiff must plead [and prove] that the market reacted negatively to some disclosure correcting the falsity in the . . . auditor's statements (and not simply the underlying fraud)."  *Amorosa v. Ernst & Young LLP*, 682 F. Supp. 2d 351, 363 (S.D.N.Y. 2010) (citation omitted); *see also In re AOL Time Warner, Inc. Sec. Litig.*, 503 F. Supp. 2d 666, 679-80 (S.D.N.Y. 2007) (rejecting corrective disclosure allegations against auditor, finding that "none of them amount to a corrective disclosure . . . because they do not reveal to the market the falsity of the prior E&Y audit opinions.") (citation omitted); *Durham v. Whitney Info. Network, Inc*., No. 06-CV-00687, 2009

- 16 -

WL 3783375, at *23 (M.D. Fla. Nov. 10, 2009) (dismissing claims against auditor on loss causation grounds because "it is clear that the press releases cannot be interpreted to 'correct' any materially false or misleading information which could possibly be attributed to any statement alleged to have been made by the Auditor Defendant").

Plaintiffs fail to so plead loss causation here. Plaintiffs allege only that the market learned of potential financial discrepancies and unexplained errors that KPMG HK discovered during its audit work on ShengdaTech's 2010 financial statements, which was never completed. Plaintiffs allege no facts establishing that the market understood these revelations as also revealing that KPMG HK's audit opinions on the Company's 2008 or 2009 financial statements were not true as of the date those opinions were issued.

Furthermore, even if such a leap were pleaded, Plaintiffs fail to plead facts making a temporal link between the revelation of the alleged falsity in KPMG HK's audit opinions and the decline in value of the Notes. Plaintiffs allege that they purchased the Notes "at or near par, and in many cases above par value." Compl. ¶ 84. Plaintiffs then make the conclusory statement that "[t]he Notes fell precipitously in response to the revelations of the financial irregularities at ShengdaTech." *Id*. Plaintiffs also allege that "[b]y June 22, 2011, 6.5% Notes traded at only $19.75, and by January 3, 2012 they traded at $15." *Id*. But Plaintiffs allege that the truth began to emerge regarding ShengdaTech's fraud on March 15, 2011 -- three months before June 22, 2011. Plaintiffs allege no facts establishing how the market price for the 6.5% Notes actually reacted to the alleged disclosure of the falsity of KPMG HK's 2008 and 2009 audit opinions.

Similarly, for the 6.0% Notes, Plaintiffs merely allege that "[o]n June 1, 2011, holders of 6.0% Notes became entitled to require ShengdaTech to repurchase these Notes . . . ." Compl. ¶ 85. Plaintiffs then allege that ShengdaTech has not paid the Notes holders. *Id*. But Plaintiffs do not allege how news revealing the alleged falsity of KPMG HK's audit opinion affected the price for the 6.0% Notes. Accordingly, Plaintiffs simply make no effort to tie any of the losses to the alleged falsity of KPMG HK's 2008 and 2009 audit opinions being revealed to the market, and

- 17 -

A/75093083.5

therefore Plaintiffs fail to plead loss causation.[3]

## IV.  THE COURT SHOULD DISMISS PLAINTIFFS' STATE LAW CLAIMS FOR LACK OF JURISDICTION IF IT DISMISSES THE SECTION 18 CLAIMS

Plaintiffs' only federal claims against KPMG HK are their Section 18 claims.  Because Plaintiffs fail to plead facts sufficient to state these Exchange Act claims against KPMG HK, the Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims.

"A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."  *Carlsbad Technology, Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)[4]).  However, courts generally decline to exercise jurisdiction over pending state claims under such circumstances as the Court faces here.  As the United States Supreme Court has observed, "When the single federal-law claim is eliminated at an 'early stage' of the litigation, the district court has a powerful reason to choose not to continue to exercise jurisdiction."  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988).  Indeed, "[a] district court usually should decline the exercise of supplemental jurisdiction when all federal claims have been dismissed at the pleading stage."  *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006) (citations omitted); *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir. 1992) (same).

Here, the Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims.  Plaintiffs' Section 18 claims are the sole basis for federal jurisdiction in this case against KPMG HK.  Since those claims are fatally defective and thus subject to dismissal "at the pleading stage," the Court should decline to exercise supplemental jurisdiction over Plaintiffs'

---

[3] In any event, Plaintiffs do not, and cannot, plead loss causation against KPMG HK for purchases of Notes that took place before KPMG HK issued its first audit opinion because the price of the Notes could not have been artificially inflated due to any KPMG HK purported misstatement.  *See Hildes v. Andersen*, 08-CV-0008-BEN RBB, 2010 WL 4811975, at *2 (S.D. Cal. Nov. 8, 2010) ("The Ninth Circuit has recognized that the acquisition of stock before the date of the alleged misrepresentation bars a plaintiff from asserting reliance or causation under Section 10(b)."); *see also supra* pp. 15-16.

[4] 28 U.S.C. §1367(c) provides, in pertinent part, that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction . . . ."

- 18 -

state law claims.

## V.    PLAINTIFFS' CLAIMS UNDER CALIFORNIA AND CONNECTICUT STATE LAW SHOULD BE DISMISSED BECAUSE THEY ARE PRECLUDED UNDER THE SECURITIES LITIGATION UNIFORM STANDARDS ACT

The Securities Litigation Uniform Standards Act ("SLUSA"), 15 U.S.C. § 78bb, precludes Plaintiffs' California and Connecticut state law claims here. SLUSA prevents "securities plaintiffs from using the class-action vehicle to prosecute state-law securities claims." *LaSala v. Bordier et Cie*, 519 F. 3d 121, 128 (3d Cir. 2008). "To be preempted by SLUSA, an action must (1) make use of a procedural vehicle akin to a class action, and (2) allege a misrepresentation or deceptive device in connection with a securities trade." *Id*. (citing 15 U.S.C. § 78bb(f)(1)). "When a claim contains both the class-action and the securities-trade ingredients, it must be dismissed." *Id*. at 128-29.

Plaintiffs' Complaint contains both requirements. First, Plaintiffs' Complaint satisfies SLUSA's definition of a "covered class action." 15 U.S.C. § 78bb(f)(5)(B)(i). SLUSA defines "covered class action" as "any single lawsuit in which damages are sought on behalf of more than 50 persons or prospective class members, and questions of law or fact common to those persons or members of the prospective class, without reference to issues of individualized reliance on an alleged misstatement or omission, predominate over any questions affecting only individual persons or members." *Id*. Plaintiffs' Complaint seeks damages relating to the purchases of "covered securities" on behalf of more than 50 persons.[5] Plaintiffs consist of eight separate entities that bring claims on behalf of (1) separate investment funds they manage and (2) clients on whose behalf they purchased Notes during the Loss Period and from whom they allegedly received valid assignment of claims relating to the Notes. Compl. ¶¶ 17-24. In determining

---

[5] The Notes are "covered securities" as defined in SLUSA since they provide options to convert to ShengdaTech's publicly traded stock. *See* 15 U.S.C. § 77bb(f)(5)(E); *Crimi v. Barnholt,* C 08-02249 CRB, 2008 WL 4287566, at *3 (N.D. Cal. Sept. 17, 2008) ("[G]ranting of stock options involves the purchase or sale of covered securities."); *accord Pace v. Bidzos,* C 07-3742PJH, 2007 WL 2908283, *1 n.1 (N.D. Cal. Oct. 3, 2007) (grant of option is a sale of the security for purposes of SLUSA preemption).

A/75093083.5

whether the "50 persons" threshold is satisfied, SLUSA requires courts to separately count each *assignor*, not just each assignee. *See LaSala*, 519 F. 3d at 134 (concluding the phrase "on behalf of 50 or more persons" refers to the assignors of a claim and the beneficiaries of a trust). Although Plaintiffs' Complaint fails to specify the number of assignments, Plaintiffs' Certificate of Interested Parties in this action identifies 45 parties, in addition to the eight named plaintiffs, that "have an interest in the outcome of this case because they may share in any monetary recovery Plaintiffs obtain."

Further, questions of law and fact, without reference to individualized issues of reliance, predominate over any questions affecting the individual purchasers. Each purchaser's claims are premised on the exact same allegations that KPMG HK made material misstatements in its 2008 and 2009 audit opinions on ShengdaTech's 2008 and 2009 financial statements. To prove their state law claims, all purchasers will have to prove that KPMG HK's 2008 and 2009 audit opinions were false at the time they were issued. Putting questions of individual reliance aside as the statute instructs, this common issue predominates over any remaining individualized issues. Thus, the first requirement for SLUSA preclusion is satisfied.

Second, Plaintiffs' claims allege that KPMG HK made misrepresentations in connection with a securities trade. Plaintiffs allege that KPMG HK's 2008 and 2009 audit opinions were false, and that KPMG HK consented to the inclusion of those opinions in the 6.5% Notes Offering Memorandum. Compl. ¶¶ 5, 138, 173, 189. Plaintiffs then allege that they purchased the Notes in reliance on the allegedly false audit opinions. Compl. ¶¶ 142-143, 176. Thus, Plaintiffs' claims also satisfy the second requirement for SLUSA preclusion.

Accordingly, because Plaintiffs' Complaint satisfies both requirements to trigger SLUSA preclusion, the Court should dismiss Plaintiffs' claims under the laws of California and Connecticut.[6]

---

[6] SLUSA preserves state statutory and common law claims that are based on the state law where the issuer is organized or incorporated. *See* 15 U.S.C. § 78bb(f)(3)(A)(i). Plaintiffs allege that ShengdaTech was incorporated in Nevada and therefore only Nevada state law claims are excluded from SLUSA preclusion. *See* Compl. ¶ 31.

## VI. PLAINTIFFS FAIL TO STATE A CLAIM FOR VIOLATION OF CALIFORNIA CORPORATIONS CODE SECTION 25504.2

California Corporations Code Section 25504.2(a) provides that an accountant may face liability if "pursuant to rule of the commissioner [the accountant] has given written consent to be and has been named" in any prospectus or offering circular distributed in connection with the sale of securities. To plead a claim under Section 25504.2, Plaintiffs must allege not only that the statements made by the accountant were untrue, but they also must plead and prove that they relied on the misstatement when purchasing the securities. Cal. Corp. Code. § 25504.2(a)(1) & (2). Plaintiffs fail to plead adequately any of the predicates to liability under Section 25504.2.

### A. Plaintiffs Fail to Plead a Primary Violation

California Corporations Code section 25504.2 provides for secondary liability "only if Plaintiffs have allege[d] a primary violation of California Corporations Code § 25401. To do so, Plaintiffs must allege that one of the defendants was the seller of the securities and plaintiff must be in privity with the seller." *In re Washington Mut.*, No. 2:08-md-01919-MJP, 2010 WL 1734848, at *8. Where a plaintiff fails to allege that it purchased securities from a defendant, as opposed to a third-party, claims under Sections 25504, 25504.1 and 25504.2 should be dismissed. *Id*. at *8-9 (dismissing the plaintiff's Sections 25504 and 25504.1 claims because it failed to allege that it purchased the securities from one of the defendants); *In re Adelphia Communications Corp. Sec. & Derivative Litig*., 03 MDL 1529 LMM, 2011 WL 5337149, at *3 (S.D.N.Y. Nov. 4, 2011) ("Because the causes of action provided for in sections 25501, 25504, 25504.1 and 25504.2 are by their terms derived from section 25401, a failure to show strict privity will defeat these derivative claims.") (citation omitted); *Employers Ins. of Wausau v. Musick, Peeler, & Garrett*, 871 F. Supp. 381, 387 (S.D. Cal. 1994) (same).

Plaintiffs do not include ShengdaTech as a defendant, and they do not even identify the sellers for the purchases in the secondary market. Plaintiffs merely make the conclusory assertion that ShengdaTech "violated California Corporations Code § 25401 by selling the 6.5% Notes by means of the false and misleading 6.5% offering memorandum . . . ." Compl. ¶ 171. That is

- 21 -

insufficient.

**B.    Plaintiffs Fail to Plead Written Consent**

Section 25504.2(a) only provides for liability against an accountant "who pursuant to [Commissioner Rules] has given written consent to be and has been named in any prospectus or offering circular distributed in connection with the offer or sale of securities . . . ."  Cal. Corp. Code. § 25504.2(a).[7]  "'The basis for liability under Section 25504.2 is that the [expert] has, pursuant to the Commissioner's rules, given written consent to be named, and in fact has been named, in any prospectus or offering circular distributed in connection with the offer or sale of securities as having prepared or certified in such capacity either any part of such document or any written report or valuation that is distributed with or referred to in such documents.'"  *In re ZZZZ Best Sec. Litig.*, CV 87-3574 RSWL, 1990 WL 132715, at *20 (C.D. Cal. July 23, 1990) (quoting 1 H. Marsh & R. Volk Practice Under the California Securities Laws § 14.03[4A][a] at 14–24.2(2) (1989)).

"The importance of the written consent element in pleading liability under § 25504.2 cannot be treated lightly."  *Id.* at *21.  "The written consent element is a vital factor in § 25504.2 liability."  *Id.*  Indeed, 10 California Code of Regulations Section 260.504.2.2(e) explicitly states that nothing "shall be deemed to take the place of, or to imply, the written consent of the expert required by Section 25504.2 of the Code as a condition of liability."  *See also ZZZZ Best*, 1990 WL 132715, at *21 ("The specificity of this element for pleading and proving liability under this statute is also evidenced by Cal. Code of Reg. § 260.504.2.2(e), which prohibits the idea of 'implied written consent.'").

Here**,** as a threshold matter, Plaintiffs' claim fails because they have not even alleged that the Notes were required to be qualified and subject to California's written consent requirement.

> If written consent has been dispensed with by the Rules, or the securities are exempt from qualification in the first instance, then no liability can arise under Corp. Code § 25504.2 despite the fact that an expert was named in a prospectus and consented to being so named (in writing or otherwise), and regardless of the fact that

---

[7] The "Commissioner" in the relevant statutory sections is the California Commissioner of Business Oversight.  Cal. Corp. Code § 25005.

A/75093083.5

> liability might otherwise arise at common law or under a statute
> other than the Corporate Securities Law.

Marsh & Volk, 1-14 Practice Under the California Corporate Securities Laws § 14.03 (Matthew Bender 2010). Nor does it appear that Plaintiff can amend to assert such allegations because the Notes appear to be exempt. *See* Cal. Corp. Code § 25100.1(a) (stating that a "covered security" pursuant to Section 18(b) of the Securities Act of 1933 is exempt from qualification). Plaintiffs cite no provisions from the California Corporations Code establishing that the Notes were required to be qualified.

Furthermore, even if the Notes were required to be qualified and subject to the written consent requirement, Plaintiffs fail to allege that KPMG HK provided written consent pursuant to the Commissioner Rules to the inclusion of its audit opinions in any prospectus or offering circular. Plaintiffs simply make the bald statement that KPMG HK "consented to the inclusion (or incorporation by reference) of its audit opinions in the 6.5% Notes Offering Memorandum . . . ." Compl. ¶ 174. Not only do Plaintiffs fail to allege facts to support this statement, but simply consenting to the inclusion is not enough. Plaintiffs must allege *written* consent *pursuant to the Commissioner Rules*. *See ZZZZ Best*, 1990 WL 132715, at *20-21 (dismissing claim against auditor where allegations merely stated that the auditor's "report was included 'with the consent of [E & W]'"). Plaintiffs fail to plead the requisite written consent and therefore the Court should dismiss Plaintiffs' Section 25504.2 claim.

Accordingly, Plaintiffs have not, and cannot, plead the requisite written consent to support their Section 25504.2 claim, and therefore the Court should dismiss it.

### C. Plaintiffs Fail to Plead Falsity and Reliance

To state a claim under Section 25504.2, Plaintiffs must allege not only that KPMG HK made an "untrue" statement, but it must also plead and prove that they acquired the security "in reliance on such untrue statement . . . ." Cal. Corp. Code § 25504.2(a)(1) & (2). As explained above, *supra* pp. 10-16, Plaintiffs fail to plead that (1) KPMG HK made a misstatement of material fact, and (2) they relied on any alleged misstatement. Thus, the Court should dismiss Plaintiffs' Section 25504.2 claim on this ground as well.

A/75093083.5

## VII. PLAINTIFFS FAIL TO STATE A CLAIM FOR VIOLATIONS OF CONNECTICUT'S SECURITIES ACT

The Connecticut Uniform Securities Act ("CUSA"), Section 36b-29(a) provides, in relevant part:

> (a) Any person who . . . (2) offers or sells or materially assists any person who offers or sells a security by means of any untrue statement of material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, who knew or in the exercise of reasonable care should have known of the untruth or omission, the buyer not knowing of the untruth or omission, and who does not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the untruth or omission is liable to the person buying the security . . . .

Conn. Gen. Stat. § 36b–29. Plaintiffs' CUSA claims must be pled with particularity under FRCP 9(b). *See IM Partners v. Debit Direct Ltd.*, 394 F. Supp. 2d 503, 518 (D. Conn. 2005) (applying FRCP 9(b) because the CUSA claims based on misrepresentations and omissions "sound in fraud"); *Spotts v. Humphrey,* 310CV00058(PCD), 2010 WL 2388454, *5 (D. Conn. June 9, 2010) (holding that the plaintiff's causes of action under sections of the CUSA that involved allegations of fraud were required to meet the particularity requirements of FRCP 9(b)). Plaintiffs failed to plead sufficiently either the necessary primary violation or that KPMG HK materially assisted a sale of securities.

### A. Plaintiffs Fail to Plead a Primary Violation

Plaintiffs allege that KPMG HK "materially assisted ShengdaTech in selling the 6.5% Notes . . . ." Compl. ¶ 189. However, in order to plead a claim for material assistance under the relevant provisions of CUSA, Plaintiffs must first allege a primary violation relating to each of the purchases. *See Connecticut Nat. Bank v. Giacomi,* 242 Conn. 17, 46, 699 A.2d 101, 118 (Conn. 1997) (holding that in order for a plaintiff to properly plead a claim for material assistance, "[f]irst there must be a primary violator"). Because Plaintiffs fail to state a primary violation against any seller of ShengdaTech's 6.5% Notes, *see supra* p. 21, Plaintiffs' CUSA claim against KPMG HK should be dismissed.

- 24 -

Moreover, Plaintiffs fail to allege any facts regarding the purchases that were made on the secondary market, including from whom those purchases were made, or when those purchases took place. Without even identifying the secondary market sellers, Plaintiffs cannot possibly plead that KPMG HK materially assisted those sellers in the sale of the securities on the secondary market. Therefore, the Court should dismiss Plaintiffs' CUSA claim to the extent it is based on purchases on the secondary market.

### B.   Plaintiffs Fail to Allege that KPMG HK Materially Assisted Any Sale of Securities

"In order for conduct to violate this section as 'material assistance,' to which we refer as aiding and abetting, it must also be proven that the aider or abettor materially assisted the primary violator: (1) in the offer or sale; and (2) in the violation by which the primary violator accomplished the offer or sale." *Giacomi*, 242 Conn. at 46, 699 A.2d at 118. "In addition to the foregoing elements of proof, the buyer must also meet a burden of production concerning the issue of whether the aider and abettor knew or should have known of the untruth or omission." *Id*. "If the buyer meets this burden of production, the burden of proof on this issue shifts, so that the aider and abettor then bears the burden of persuading the fact finder that it did not know, and in the exercise of reasonable care could not have known, of the untruth or omission." *Id.*

Plaintiffs fail to allege facts (1) establishing that KPMG HK materially assisted the securities sales and (2) that it knew or should have known the allege misrepresentations and omissions. As to the former point, Plaintiffs do not allege that KPMG HK marketed the Notes to the noteholders, provided any advice, information or documents to the noteholders to induce their purchases, participated in meetings with the noteholders, prepared any portion of the Offering Memorandum, had a financial interest in the offerings of the Notes, played a managerial role at ShengdaTech or otherwise offered or sponsored the sales of the Notes. Without such allegations, there is no basis to assert a claim of material assistance.

As to the latter point, Plaintiffs fail to allege that KPMG HK knew or should have known of any alleged misrepresentations and omissions. As explained above, Plaintiffs fail to allege

- 25 -

facts establishing that KPMG HK failed to comply with GAAS or that it ignored any information that would have uncovered any purported fraud. Plaintiffs' failure to plead such knowledge renders Plaintiffs' CUSA claims fatally defective. *Poptech, L.P. v. Stewardship Inv. Advisors, LLC*, 849 F. Supp. 2d 249, 279 (D. Conn. 2012) ("Plaintiffs fail to carry their burden to allege that [the defendant] assisted other Defendants in the securities fraud violation or that, even if he did, [the defendant] knew or should have known of the alleged misrepresentations and omissions.")

## VIII. PLAINTIFFS' NEGLIGENT MISREPRESENTATION CLAIM SHOULD BE DISMISSED

To support a claim of negligent misrepresentation, a plaintiff must plead that: (1) "a false representation was made," (2) "the representation was made in the course of a defendant's business or that the defendant had a pecuniary interest in the action," (3) "the representation was for the guidance of others in their business transactions," (4) "the plaintiff justifiably relied on a defendant's representation," (5) "this reliance resulted in pecuniary loss to the relying party" and (6) "the defendant did not exercise reasonable care or competence in obtaining or communicating the information." *Story-McPherson v. Bank of Am., N.A.*, 2:11-CV-01470-KJD, 2012 WL 2000693, at *3 (D. Nev. June 5, 2012). "Claims of intentional and negligent misrepresentation must be pled with particularity pursuant to Fed.R.Civ.P. 9(b)." *Tene v. BAC Home Loan Servicing LP*, 2:11-CV-01095-KJD, 2012 WL 222920, at *3 (D. Nev. Jan. 25, 2012); *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003) ("It is well-established in the Ninth Circuit that both claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements."). In several different respects, Plaintiffs' pleading of negligent misrepresentation falls short.

### A. Plaintiffs' Claims Should Be Dismissed to the Extent They Are Based on Assigned Claims

Plaintiffs' negligent misrepresentation claims that are based on assignments of interests to Plaintiffs are defective as a matter of law. *See, e.g.*, Compl. ¶¶ 17, 20. Nevada law prohibits the

assignment of negligent misrepresentation claims.  *See In re AgriBioTech, Inc.,* 319 B.R. 207, 210 (D. Nev. 2004) ("Nevada law prohibits the assignment of fraud and negligent misrepresentation claims").

### B.    Plaintiffs Fail to Allege that KPMG HK Owed Them Any Duty

In determining liability for negligent misrepresentation, Nevada has adopted the Restatement (Second) of Torts § 552.  *See Copper Sands Homeowners Ass'n. Inc. v. Copper Sands Realty, LLC*, 2:10-CV-00510-GMN, 2012 WL 987996, at \*3 (D. Nev. Mar. 20, 2012) ("Nevada has adopted Restatement (Second) of Torts § 552."); *Barmettler v. Reno Air, Inc*., 114 Nev. 441, 448-49, 956 P.2d 1382, 1387 (Nev. 1998) (noting that Nevada has adopted the Restatement (Second) of Torts § 552 definition of the tort of negligent misrepresentation). Section 552 limits liability to losses suffered "(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction."  Restatement (Second) of Torts § 552(2) (1977).

Courts applying Restatement (Second) of Torts § 552 have held repeatedly that an auditor retained to conduct an annual audit and furnish an audit opinion has no duty to the general investing public for claims of negligent misrepresentation.  "[A]n auditor retained to conduct an annual audit and to furnish an opinion for no particular purpose generally undertakes no duty to third parties."  *Bily v. Arthur Young & Co*., 3 Cal. 4th 370, 393, 834 P.2d 745, 758 (Cal. 1992); *see also Washington Mut.*, 2010 WL 1734848, at \*7 (citing *Bily*, and holding that auditors not liable where its audit statement is merely disseminated by the company to the general investing public); *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 919 (Tex. 2010) (citing *Bily* application of the Restatement rule on auditor liability and holding that fund that purchased bonds was outside the auditor's scope of liability for negligent misrepresentation to a third party); *Western Sec. Bank v. Eide Bailly LLP*, 359 Mont. 34, 46, 249 P.3d 35, 44 (Mont. 2010) (applying restatement and affirming summary judgment in favor of accountant); *Nycal*

1   *Corp. v. KPMG Peat Marwick LLP.*, 426 Mass. 491, 498, 688 N.E.2d 1368, 1372-73 (Mass.

2   1998)  (applying restatement and dismissing negligent misrepresentation claim against auditors).

3         Liability against an auditor may only be imposed when the auditor "undertakes to supply

4   information to a third party whom [the auditor] knows is likely to rely on it in a transaction that

5   has sufficiently specific economic parameters to permit [the auditor] to assess the risk of moving

6   forward." *Bily,* 3 Cal. 4th at 409, 834 P.2d at 769.[8]  Further, an auditor's liability is fixed by the

7   accountants' particular knowledge "*at the moment the audit [report] is published.*" *Nycal*, 426

8   Mass at 498, 834 P.2d at 1372 (quoting *First Nat. Bank of Commerce v. Monco Agency Inc.*, 911

9   F.2d 1053, 1059 (5th Cir. 1990) (applying restatement standard)) (emphasis added); *Ret.*

10  *Programs for Employees of Town of Fairfield v. NEPC, LLC*, X08CV095013326S, 2011 WL

11  6934794, at \*10 (Conn. Super. Ct. Dec. 8, 2011) (holding that for § 552 liability an accountant's

12  knowledge is measured at the moment the audit report is published and "not by the foreseeable

13  path of harm envisioned by litigants years following an unfortunate business decision"); *see also*

14  *Industrial Indemnity Co. v. Touche Ross & Co.,* 13 Cal. App. 4th 1086, 1095, 17 Cal. Rptr. 2d 29,

15  35 (Cal. App. Ct. 1993).  "[L]iability is limited to those persons or class of persons, as determined

16  by current business practices and the particular factual situation, whom the accountant *at the time*

17  *the [audit] report is published* should reasonably expect to receive and rely on the information."

18  *Bethlehem Steel Corp. v. Ernst & Whinney*, 822 S.W.2d 592, 596 (Tenn. 1991) (emphasis added).

19  Simply put, an accounting firm cannot be made liable for its audit opinion by events occurring

20  after the issuance of the opinion without express further action by the firm to acknowledge and

21  consent to that later use.

22        Plaintiffs allege that KPMG HK (1) "consented" to the incorporation of its audit opinions

23  in the 6.5% Notes Offering Memorandum and (2) "knew and intended that potential purchasers

24  who received the 6.5% Offering Memorandum would rely on its contents . . . ."  Compl. ¶ 138.

25

26  _____
    [8] For example, an auditor may owe a duty to investors where, unlike here, the auditor prepared
27  the financial statements rather than performing an audit.  *See Nutmeg Securities, Ltd. v.*
    *McGladrey & Pullen,* 92 Cal. App. 4th 1435, 1443, 112 Cal. Rptr. 2d 657, 663 (Cal.App. Ct.
28  2001) (auditor could be held liable for negligent misrepresentation because it "participated in the
    *creation* of these financial statements" rather than "simply conduct[ing] an independent audit").

Plaintiffs plead no facts in support of either of these conclusory assertions. Plaintiffs have not alleged with particularity that KPMG HK signed any such consent statement, and no such statement appears in the Offering Memorandum. Nor do Plaintiffs otherwise assert any facts that support the conclusion that KPMG HK provided express consent to the inclusion of its earlier audit opinions in the 6.5% Offering Memorandum. The Complaint simply asserts the conclusion that KPMG HK consented. Further, Plaintiffs do not allege any facts supporting their allegation that KPMG HK knew and intended that potential purchasers rely on their audit opinions.[9]

**C.     Plaintiffs Fail to Allege that KPMG HK Did Not Exercise Reasonable Care**

Plaintiffs also fail to allege that KPMG HK "did not exercise reasonable care or competence in obtaining or communicating the information." *Story-McPherson*, 2012 WL 2000693, at *3; *Bily*, 3 Cal. 4th at 407, 834 P.2d at 768 ("Where the defendant makes false statements, honestly believing that they are true, but without reasonable ground for such belief, he may be liable for negligent misrepresentation, a form of deceit."). As explained above, *supra* pp.11-12, KPMG HK issued its opinions after completing its audits. Plaintiffs, however, do not allege any facts establishing that KPMG HK did not comply with GAAS in conducting its audit work, or otherwise failed to conduct its audits with reasonable care. Thus, the Court should dismiss Plaintiffs' negligent misrepresentation claim on this ground as well.

**D.     Plaintiffs Fail to Allege an Untrue Statement, Reliance and Causation**

For the reasons set forth above, *see supra* pp. 10-18, Plaintiffs also fail to plead that

---

[9] Allegations that simply assert that an auditor was aware of the later transaction, and was aware that, in connection with that transaction, the client was choosing to include earlier-issued financial statements, are not sufficient. *See Nordica USA, Inc. v. Deloitte & Touche, LLP*, 839 F. Supp. 1082, 1090-91 (D. Vt. 1993) (interpreting Utah statute that follows Restatement test; no duty to plaintiffs where, at some time after the audit opinions were issued, auditor was notified that its reports would be provided by its client to potential shareholders in the client). As the court in *Nordica* recognized in reaching its conclusion, "[i]f accountants, when notified years after an audit that past financial statements are being forwarded to third parties, could be held liable to those third parties, accountant's liability would be virtually unlimited." *Id.* at 1090. The court further noted: "Under plaintiffs' reading, a client could contract for audit services and forward the documents to unlimited numbers of third parties years later. The accountant would then be liable to all the third parties if the client, years after the audit, let the accountant know of the third party involvement." *Id.* at 1090 n.12.

KPMG HK made an untrue statement of material fact, that they relied on KPMG HK's audit opinions in purchasing ShengdaTech's 6.5% Notes, or that the revelation of the falsity of KPMG HK's 2008 and 2009 audit opinions caused the losses that they allegedly incurred in 2011.[10] Plaintiffs' negligent misrepresentation claim should be dismissed for these same reasons as well.

## IX. CONCLUSION

For the foregoing reasons KPMG HK respectfully requests that Plaintiffs' claims against KPMG HK be dismissed with prejudice.

DATED this 5th day of September, 2012

CAMPBELL & WILLIAMS

By: _s/Donald J. Campbell_
Donald J. Campbell (Nevada Bar # 1216)
djc@campbellandwilliams.com
J. Colby Williams (Nevada Bar # 5549)
jcw@campbellandwilliams.com
700 S. Seventh Street
Las Vegas, NV 89101
(702) 382-5222

BINGHAM MCCUTCHEN LLP
Geoffrey F. Aronow
(_Admitted Pro Hac Vice_)
geoffrey.aronow@bingham.com
2020 K Street NW
Washington, DC 20006-1806
(202) 373-6000

BINGHAM MCCUTCHEN LLP
Edward S. Kim
(_Admitted Pro Hac Vice_)
edward.kim@bingham.com
Craig A. Taggart
(_Admitted Pro Hac Vice_)
craig.taggart@bingham.com
600 Anton Boulevard, 18th Floor
Costa Mesa, CA 92626-1924
(714) 830-0622

Attorneys for Defendant KPMG HK

---

[10] Courts apply federal loss causation principles to state common law fraud and negligent misrepresentation claims when determining whether the element of proximate causation has been satisfied in a securities fraud action. _See, e.g., Kelley v. Rambus, Inc._, No. C 07-01238 JF, 2008 WL 1766942, at *2 (N.D. Cal. April 17, 2008) (holding that loss causation is an element of California common law fraud claim and applying federal loss causation case law to such claim)

- 30 -

1

### CERTIFICATE OF SERVICE

2

The undersigned hereby certifies that the foregoing **KPMG HK's MOTION TO**

3

**DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**

4

**MOTION TO DISMISS** was served on the 5th day of September, 2012 via the Court's CM/ECF

5

electronic filing system addressed to all parties on the e-service list.

6

7

8

*/s/ Donald J. Campbell*
An employee of Campbell & Williams

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 31 -

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that the foregoing **KPMG HK's MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS** was served on the 5th day of September, 2012 by mail to the following list of attorneys by causing a true and correct copy of the above to be placed in the United States Mail at Las Vegas, Nevada, in sealed envelope(s) with postage prepaid, addressed as set forth below.

George A. Salter
Nathaniel E. Marmon
Peter J. Dennin
Hogan Lovells US LLP
875 Third Avenue
New York, NY 10022

Kenneth M. Katz
William R. Maguire
Yoshinori M. Sasao
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, NY 10004


_/s/ **Donald J. Campbell**_
An employee of Campbell & Williams

- 32 -